295 N.J. Super. 206 (1996)
684 A.2d 991
SADIE DAI, PLAINTIFF,
v.
COMMUNITY MEDICAL CENTER, A/K/A COMMUNITY MEMORIAL HOSPITAL, DEFENDANT-RESPONDENT/CROSS-APPELLANT, AND NEW JERSEY AUTOMATIC DOOR, INC., DEFENDANT-APPELLANT/CROSS-RESPONDENT, AND BESAM, INC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1996.
Decided November 19, 1996.
Before Judges KING, KEEFE and CONLEY.
*207 Joseph A. Daly argued the cause for appellant New Jersey Automatic Door, Inc. (Kelly, McLaughlin & Foster, attorneys; Mr. Daly and John A. Hatcher, on the brief).
Richard A. Grossman argued the cause for respondent Community Medical Center (Grossman & Kruttschnitt, attorneys; Thomas J. Heavey, of counsel; Tama V. Baran, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
This appeal by New Jersey Automatic Door, Inc. (NJAD) and cross-appeal by Community Medical Center, a/k/a Community Memorial Hospital (CMC) stems from the entry of a limited judgment in favor of NJAD against CMC based on an indemnification provision contained in a preventative maintenance contract. We reverse on NJAD's appeal and affirm on CMC's cross-appeal.
On March 29, 1990, plaintiff Sadie Dai, now deceased, was seriously injured when the automatic doors located at CMC's main entrance struck her. Plaintiff was leaving the hospital after visiting her husband when the accident occurred. She sued CMC, NJAD, and Besam, Inc. (Besam). NJAD had installed the automatic door equipment at CMC, and had contracted with CMC to service and maintain that equipment. Besam was the parent corporation of NJAD and the manufacturer of the motor mechanism for the automatic door.
At a settlement conference conducted prior to the commencement of trial in June 1994, plaintiff agreed to accept $150,000 in full release of her claims against all parties. CMC refused to contribute to the settlement. NJAD advised CMC that it would settle the claim in that amount and reserve the right to prosecute its cross-claim for indemnification against CMC pursuant to the indemnity clause contained in paragraph 12 of NJAD'S preventative maintenance agreement with CMC. That paragraph in pertinent part states:
Customer [CMC] agrees to indemnify, defend, and save the Distributor [NJAD] harmless from and against any and all claims, losses, damages or liabilities of any *208 kind arising out of or in connection with any injury or damage to persons or property on or about customer facility, unless such injury or damage was caused by Distributor's sole and direct negligence.
NJAD paid the settlement money to plaintiff solely on behalf of NJAD, and specifically reserved the right to pursue its cross-claim in the release.
Prior to trial of the indemnification claim, the trial court held that the Charitable Immunity Act (Act), specifically N.J.S.A. 2A:53A-8, applied to actions based on contract indemnification agreements and that CMC's liability, if any was to be found at trial, would be limited to "the statutory criteria of $10,000." The matter then proceeded to trial. The jury found that both NJAD and CMC were negligent and their negligence was a proximate cause of plaintiff's injuries. The jury also found that NJAD "legitimately face[d] potential liability for the claim underlying the settlement," and that NJAD's settlement with plaintiff was "reasonable." Finally, the jury found that NJAD's settlement with plaintiff "terminate[d] or reduce[d] a valid claim against the hospital."
A judgment was entered in favor of NJAD in the amount of $10,000 on its contractual indemnification claim against CMC. Subsequently, the trial court granted NJAD's application for counsel fees and costs under the agreement totaling $42,953.87. This appeal followed.

I
NJAD contends that the trial judge erred in limiting CMC's liability to $10,000 in respect of plaintiff's settlement. We agree. In material part, N.J.S.A. 2A:53A-7 provides that "[n]o non-profit corporation ... organized exclusively for ... hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation ..., where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation." (Emphasis added.) N.J.S.A. 2A:53A-7 *209 also provides that "such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation ... or its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation." (Emphasis added.) Further, on the date of plaintiff's accident, N.J.S.A. 2A:53A-8 provided that "[n]otwithstanding the provisions of ... [N.J.S.A. 2A:53A-7], any nonprofit corporation ... organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation ... or its agents or servants to an amount not exceeding $10,000.00, together with interest and costs of suit, as the result of any 1 accident."[1] (Emphasis added.)
Notably, these sections of the Act speak specifically and only of "negligence" because the Act "was enacted in order to immunize corporations, societies, and associations organized exclusively for religious, charitable, or hospital purposes from tort liability in specific circumstances[.]" Alicia Bottari, The Charitable Immunity Act, 5 Seton Hall Legislative Journal 61, 68-69 (1980). This interpretive theme was adopted by the Supreme Court in Brown v. St. Venantius School, 111 N.J. 325, 336, 544 A.2d 842 (1988), where the Court said: "we do not believe the Legislature intended the courts to refrain from imposing liability on charitable organizations in cases not specifically covered by the statute." Id. at 337, 544 A.2d 842. For example, the Act does not apply to negligence actions where a non-beneficiary is injured. Ibid. That being the case, it is axiomatic that the Act does not apply to actions against a charitable organization based upon contract.
The Act immunizes CMC from "tort liability" to beneficiaries, not from contract liability to non-beneficiaries. Id. at 336-37, 544 *210 A.2d 842. NJAD's claim for indemnification from CMC arises from CMC's breach of contract, not CMC's negligence. There is nothing in the Act to indicate that the Legislature intended to prohibit a charitable organization, such as CMC, from entering into an indemnity agreement that might create contractual liability triggered by its negligent conduct toward a beneficiary. Cf. Ramos v. Browning Ferris Industries, 103 N.J. 177, 191, 510 A.2d 1152 (1986) (holding that the Workers' Compensation Act does not preclude an employer from assuming a contractual duty to indemnify a third party through an express agreement notwithstanding its statutory immunity from tort liability). While the condition precedent for performance under such a contract may be CMC's negligence, its liability is based upon contract, not tort. Ibid. To put it somewhat differently, NJAD's right of indemnification arises from a separate contractual undertaking, and is not derivative of plaintiff's claim in the same sense that a spouse's per quod claim is derivative of an injured spouse-beneficiary's claim. Compare Marsella v. Monmouth Medical Center, 224 N.J. Super. 336, 540 A.2d 865 (App.Div. 1988).
Nor is there anything in the Act to indicate that once a charitable organization enters into an agreement to indemnify another stemming from its negligence the limitation of liability provided for in N.J.S.A. 2A:53A-8 applies unless it is specifically waived. Judges may not rewrite or embellish a statute, or supply a provision not contained therein. Aetna Insurance Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 566, 428 A.2d 1254 (1981). It is also "elementary that the function of the court is not to make contracts but to enforce them"; a court is "not at liberty to make a better contract for a party than that which he has voluntarily entered into or alter it for his benefit to the detriment of the other party." Moscowitz v. Middlesex Borough Building & Loan Ass'n, 14 N.J. Super. 515, 521, 82 A.2d 228 (Law Div. 1951), aff'd, 18 N.J. Super. 182, 186, 87 A.2d 33 (App.Div. 1952); see Ramos v. Browning Ferris Industries of South Jersey, Inc., supra, 103 N.J. at 191, 510 A.2d 1152 ("[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts *211 generally"); see also Port Authority of N.Y. and N.J. v. Honeywell Protective Services, 222 N.J. Super. 11, 20, 535 A.2d 974 (App.Div. 1987) ("parties to a contract can generally allocate the burden of risk as to potential tort liability in any manner they may choose").
Further, the trial court's interpretation of the contract is contrary to the plain language of the indemnification provision in which CMC agreed to indemnify NJAD from "any and all claims, losses, damages or liabilities of any kind" arising out of "any injury or damages to persons or property" on or about CMC's facility. The words "any and all" convey the intent that complete and full indemnity is to be provided by CMC as long as the accident was not caused solely by the negligence of NJAD. See Bethlehem Steel Corp. v. K.L.O. Welding Erectors, Inc., 132 N.J. Super. 496, 498-500, 334 A.2d 346 (App.Div. 1975) (contract provision to indemnify "any and all loss or liability" stressed the breadth of the indemnity provision and compelled the conclusion that the "parties intended that attorneys' fees and costs would be subject to indemnification under the contract").
Thus, the trial court erred in holding that CMC's liability under the indemnification agreement was limited to the statutory criteria of $10,000 because the agreement did not specify the amount to which CMC agreed expose itself in excess of the statutory limitation.
Parts II through VI of the opinion are omitted for publication purposes at the request of the court pursuant to R. 1:36-2(d).
NOTES
[1] On July 1, 1991, the Legislature amended N.J.S.A. 2A:53A-8 by raising the liability limit to $250,000, effective July 31, 1991. Inasmuch as the legislation was not intended to be retroactive, it does not apply to this action. Schiavo v. John F. Kennedy Hospital, 258 N.J. Super. 380, 382-83, 609 A.2d 781 (App.Div. 1992), aff'd o.b. 131 N.J. 400, 620 A.2d 1050 (1993).