848 A.2d 61 (2003)
369 N.J. Super. 103
Sayid NAGIM, Plaintiff,
v.
NEW JERSEY TRANSIT, Defendant/Third-Party Plaintiff,
v.
Urbitran Associates, Inc., Defendant/Third-Party Defendant.
Superior Court of New Jersey, Law Division, Hudson County.
Decided July 3, 2003.
*62 Alfred F. Carolonza, Jr. for plaintiffs.
Laura A. Carney, for defendant/third-party plaintiff (State of New Jersey, Dept. of Law & Public Safety, Division of Law).
Jennifer B. Minsky, for third-party defendant (Zetlin & DeChiara).
MESSANO, J.S.C.

FACTUAL STATEMENT
This matter comes before the court by way of a motion to dismiss plaintiff Sayid Nagim's complaint with prejudice filed by defendant Urbitran Associates, Inc. (Urbitran). Plaintiff opposes this motion. Defendant New Jersey Transit (Transit) opposes Urbitran's motion as to Transit's claims against Urbitran.
This matter arises out of property damage, which occurred on September 15 *63 through September 17, 1999, during Hurricane Floyd. At that time, plaintiff, the owner of Afghan Oriental Rugs, alleges that his rug inventory was damaged by flooding. Plaintiff contends that construction being performed on the abutting Transit property in the days prior to the storm caused flooding that led to the damage to his property. Plaintiff claims a property damage loss of over $450,000. On October 27, 1999 plaintiff hired Patrick Porzio (Porzio) of Extended Warranties of New Jersey, a home warranty and inspection service, to give his opinion as to the cause of plaintiff's damage. Porzio prepared a report that, together with Transit's tort claims form, was filed with Transit on or before December 9, 1999.
Urbitran was hired by Transit to perform professional engineering services for the construction of a parking lot on Transit's property adjacent to plaintiff's store. Plaintiff claims that the plans, surveys and other information provided by Urbitran in connection with the Transit project were deficient in that they failed to properly identify a drainage trough and/or failed to require certain protections to the trough during construction. Plaintiff contends that these alleged deficiencies resulted in damage to his adjacent store, warehouse and inventory. In addition, plaintiff asserts that Urbitran's design for the project improperly required construction activities to encroach upon plaintiff's property. Porzio's report says only the following: "It is our professional opinion that the parking area owner/occupier of the land adjoining/abutting the Nagim property is responsible for the loss to Nagim, caused either by its agents, servants, or employees, and/or contractors, who performed the site work and or planned it."
Transit initially commenced the action against Urbitran pursuant to a third-party complaint filed on October 16, 2001. The third-party complaint seeks defense and indemnification with respect to plaintiff's claims. This claim is made pursuant to the contract between the parties in which Urbitran agreed to "defend, indemnify, protect, and save harmless [Transit] from any and all suits, claims, demands, or damages of whatsoever kind... but only to the extent they arise out of any act, error or omission, or failure to exercise such care as is customary in the profession ... in the performance of any and all services pursuant to this Agreement."
Urbitran filed its answer to the third-party complaint on or about April 1, 2002. All discovery to that point was forwarded to Urbitran by Transit. On June 14, 2002, plaintiff served a second amended complaint naming Urbitran as a direct defendant alleging negligent design as set forth above. A literal reading of the complaint contains an allegation of professional negligence. Urbitran's answer to plaintiff's complaint was filed on July 11, 2002.
Urbitran moved to dismiss the complaint with prejudice as plaintiff had failed to provide an affidavit of merit, pursuant to N.J.S.A. 2A:53A-27, within the time constraints required by the statute. Urbitran also sought dismissal of all cross-claims for indemnification brought against it by its co-defendant, Transit, as initially contained in Transit's third-party complaint for the same reason, i.e., no affidavit of merit had been filed or served by Transit. For reasons set forth in a letter opinion to counsel, Urbitran's motion was granted and plaintiff's complaint was dismissed.[1] The impact *64 of the dismissal of plaintiff's case against Transit, and the merits of Urbitran's motion to dismiss Transit's cross-claim for indemnification are the subject of this opinion.

LEGAL ARGUMENT AND DECISION
A. Applicability of the Affidavit of Merit Statute to an Engineering Firm
The Affidavit of Merit Statute (AMS) provides:
In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional ... standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause. The person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action....
[N.J.S.A. 2A:53A-27].
The AMS was a legislative response designed to weed out frivolous lawsuits at an early stage and to allow meritorious cases to go forward. Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 771 A.2d 1141 (2001). It was designed as a tort reform measure and requires a plaintiff in a malpractice case to make a threshold showing that the claims asserted are meritorious. Id. at 350, 771 A.2d at 1147.
The statute defines the term "licensed person" and makes the provisions of the law applicable only to those so defined. N.J.S.A. 2A:53A-26(e) defines one such category of "licensed person[s]" as engineers "pursuant to N.J.S.A. 45:8-27 et seq." It is undisputed that Urbitran has received an authorization from the State of New Jersey to perform professional engineering services. However, engineering corporations, like Urbitran, may not be licensed; only individual engineers may be licensed. N.J.S.A. 45:8-27. The statute by its express terms, only applies to "licensed person[s]." This issue was raised, but specifically not addressed in Berlin v. Remington & Vernick Eng'rs, 337 N.J.Super. 590, 595-96, 767 A.2d 1030, 1033-34 (App.Div.2001). The Berlin court noted that at least one federal court decision, Martin v. Perinni Corp., 37 F.Supp.2d 362, 366 (D.N.J.1999), considered the issue with respect to an architectural firm, and concluded that the statute applied. The Berlin court noted that unlike the architectural licensing scheme in New Jersey, the engineering licensing scheme expressly prohibited engineering corporations from becoming licensed in New Jersey. 337 N.J.Super. at 595-96, 767 A.2d at 1033-34. In Medeiros v. O'Donnell & Naccarato, Inc., 347 N.J.Super. 536, 790 A.2d 969 (App.Div.2002), the court considered the adequacy of an affidavit of merit as to an engineering firm without comment as to the statute's applicability to engineering firms as "licensed person[s]." Arguably, if the appellate court had considered an engineering firm to be outside the purview of the statute, the adequacy of the affidavit under consideration would not have mattered in the first instance.
*65 This court concludes that despite this statutory prohibition against licensing engineering firms, the purpose of the AMS would be significantly thwarted if plaintiffs could avoid the requirements of the statute by simply alleging professional negligence on the part of a firm of licensed professionals, without naming any such individual professional specifically. The conduct of the firm, of course, is dependent upon the acts or omissions of its individual employees. The purpose of the statute is to eliminate, at an early stage, meritless suits against certain professionals. This purpose would clearly be circumvented if lawsuits could be pursued against firms of licensed professionals without the filing of any affidavits of merit based upon allegations that were identical to those against any particular member of the same firm. This would not make sense and would thwart the general legislative purposes of the AMS. Thus, the court concludes that the affidavit of merit statute applies to this defendant, Urbitran, an engineering firm authorized to perform engineering services here in New Jersey.
B. Applicability of the Affidavit of Merit Statute to Third-Party complaints
The court turns now to the effect of the dismissal of plaintiff's complaint, and the failure on the part of Transit to serve any affidavit of merit as to Urbitran, upon Transit's claim for indemnification and defense from Urbitran.[2] Urbitran argues that the claim must be dismissed because in order to succeed on its indemnity claim under the terms of its contract with Urbitran, Transit must prove a deviation from professional standards applicable to the engineering profession. As such, Transit's claim is subject to the AMS. Transit has not served an affidavit of merit, Plaintiff did not, and thus, despite the existence of the contractual indemnification language, the claim by Transit should also be dismissed. Urbitran submits that, at most, its name may be kept on any verdict sheet in the event Transit proves negligence on the part of Urbitran; this, pursuant to the holding in Burt v. W. Jersey Health Sys., 339 N.J.Super. 296, 771 A.2d 683 (App.Div.2001), would still deny plaintiff and Transit any recovery against Urbitran, but would assure Transit would only be liable to plaintiff for Transit's own share of the negligence.
Transit argues that its claim is made pursuant to its contract with Urbitran, and thus, is not a claim subject to the AMS. Transit likens its claim to a cross-claim not subject to the statute under the holding in Burt and argues third-party claims are not subject to the AMS. However, unlike the co-defendants in Burt, Transit's claim for indemnification and defense pursuant to its contract with Urbitran goes beyond mere contribution or "settlement" credit from a joint tortfeasor.[3] The issues presented have never been the subject of a reported opinion.
In Burt, at 303, 771 A.2d at 687, the court was faced with the task of harmonizing the legislative purposes behind the AMS, the Joint Tortfeasor Contribution Law, N.J.S.A. 2A:53A-1 to -5, and the Comparative Negligence Act, N.J.S.A.
*66 2A:15-5.1 to 5.4. After dismissing plaintiff's complaint against a group of defendants (the "anesthesiology defendants") because of a failure to comply with the AMS, co-defendants (the "hospital defendants") were barred from introducing evidence of the dismissed defendants' negligence by the trial judge despite their cross-claims in the pleadings for contribution, indemnification, or "settlement credit". The Appellate Division granted interlocutory appeal and concluded that the hospital defendants should be entitled to prove the negligence of the dismissed co-defendants and to have the issue of their negligence submitted to the jury for consideration. 339 N.J.Super. at 305, 771 A.2d at 688. The court found such a result consistent with all the applicable statutes since it would allow the hospital defendants to be held responsible only for their share of the negligence, would not subject the dismissed defendants to any recovery from the plaintiff or the hospital co-defendants, and would not reward the plaintiff for her failure to comply with the affidavit of merit statute. Id. at 309-10, 771 A.2d at 690-91. Most importantly, the court concluded that the cross-claim for contribution and indemnification would not be barred by the failure of any of the defendants to file any affidavits of merit themselves. Id. at 305, 771 A.2d at 688. The court reasoned that the statute, by its terms, applies to "plaintiffs" and places the obligation to furnish the affidavit of merit upon the "plaintiff". Ibid. The court declined to extend the statute to cross-claimants. Ibid. However, in a footnote, the court noted, "We express no opinion as to whether a defendant who seeks to implead a new defendant by way of a third-party complaint pursuant to R. 4: 8-1(a) must file and serve an Affidavit of Merit." Burt, supra, 339 N.J.Super. at 305 n. 2, 771 A.2d at 688 n. 2. Of course, in the situation at bar, Urbitran became a party to this case, in the first instance, when Transit named it as a defendant in Transit's third-party complaint.
The nuances of the application of the AMS to pleadings other than the original complaint were further explored in Manganaro Consulting Eng'rs, Inc. v. Carneys Point Tp. Sewerage Auth., 344 N.J.Super. 343, 781 A.2d 1116 (App.Div.2001). The plaintiff engineering company sued the Township defendant for breach of contract for certain professional engineering services rendered. The Township answered the complaint and asserted both an affirmative defense and a counterclaim for breach of contract based upon the plaintiffs' failure to perform the work in a professional manner. The Township never served an affidavit of merit. The trial court reasoned that both the affirmative defense and the counterclaim were subject to the AMS and granted the plaintiff summary judgment. Id. at 346, 781 A.2d at 1117.
The appellate court concluded that the affirmative defense asserted by the Township did not implicate the statute and did not require an affidavit of merit. The court noted that the language of the statute applied to "plaintiffs", and to an "action for damages." Neither of those terms applied to the Township's affirmative defense. In addition, the court reasoned that the purpose of the AMS, which was "to weed out frivolous [malpractice] lawsuits early in the litigation" was not served by requiring an affidavit of merit in support of an affirmative defense. Id. at 347, 781 A.2d at 1118 (citing Hubbard v. Reed, 168 N.J. 387, 395, 774 A.2d 495, 500 (2001)).
However, the court concluded that the Township's counterclaim was an action within the scope of the AMS in that it was an "action for damages" based upon "an alleged act of malpractice or negligence", and it was not a defensive pleading, but *67 rather an affirmative claim. Ibid. The court noted that the defendant-counterclaimant sought the recovery of money damages against the plaintiff, and not just the defeat of the plaintiff's claim for monies due. Thus, the failure by the Township to file an affidavit of merit resulted in the proper dismissal of its counterclaim. In so ruling, the court noted its reasoning was consistent with the result reached by the Burt court, in that a cross-claimant can reasonably rely upon the plaintiff to provide an affidavit of merit against a co-defendant, but a counterclaimant has no such reasonable expectation. Id. at 348, 781 A.2d at 1118. Thus, the Burt court's conclusion that the AMS did not apply to cross-claims, was not inconsistent with the conclusion that the AMS did apply to counterclaims. Ibid. The application of the AMS to counterclaims was, of course, foreshadowed implicitly by the holdings of the Appellate Division and the Supreme Court in Cornblatt v. Barow, 303 N.J.Super. 81, 696 A.2d 65 (App.Div.1997), aff'd, 153 N.J. 218, 708 A.2d 401 (1998).
The holdings in Burt and Manganaro to the matter at hand, however, do not necessarily provide the guidance to resolve the effect of the dismissal of plaintiff's claims against Urbitran upon the claim for indemnification made by Transit. Here, the claim originated by Transit filing a third-party complaint against Urbitran, until then, unnamed in the suit. Thus, Transit could not necessarily expect that some other party, i.e. the plaintiff, would bear the responsibility of producing a required affidavit, if indeed one is required. To this extent, the Manganaro court's explanation and rationalization of the holding in Burt does not exist. Indeed, plaintiff did, soon thereafter, amend his complaint to directly name Urbitran and failed to provide the requisite affidavit, leading to dismissal of his claim. In addition, Transit's claim against Urbitran, unlike the defendant's claim in Manganaro is not a claim that seeks affirmative relief against Urbitran. It seeks indemnification and defense from Urbitran pursuant to the contract between the parties. In that sense, regardless of its genesis as a third-party complaint, the claim is similar to a cross-claim, like that considered by the Burt court, and held to be outside the purview of the AMS.
In order to resolve the issue against such an unsettled landscape, this court must look again to the language of the statute itself, its legislative purpose, and the nature of Transit's claim against Urbitran. Before turning to the language of the statute itself, the court is mindful that our Supreme Court, in interpreting the AMS, has instructed that when a "literal interpretation of individual statutory terms or provisions would lead to results inconsistent with the overall purpose of the statute, that interpretation should be rejected." Hubbard v. Reed, supra, 168 N.J. at 392-93, 774 A.2d at 498 (quoting Cornblatt, v. Barow, 153 N.J. 218, 242, 708 A.2d 401, 413 (1998)). That purpose, once again, is to identify meritless lawsuits at an early stage of the litigation by requiring a plaintiff to file an affidavit of merit demonstrating at least a threshold determination by a like-licensed professional that the plaintiff's claim was meritorious. Davies v. Imbesi, 328 N.J.Super. 372, 746 A.2d 40 (App.Div.2000); Hyman Zamft & Manard, L.L.C. v. Cornell, 309 N.J.Super. 586, 707 A.2d 1068 (App.Div.1998).
In the matter at bar, Transit filed its third-party complaint against Urbitran well after plaintiff commenced the litigation. The overall litigation, therefore, was not at an early stage. However, the introduction of Urbitran to the litigation did not commence until Transit filed its claim, and then plaintiff thereafter impled Urbitran directly. In determining that plaintiff had *68 failed to meet its requirements of filing an affidavit of merit, and that dismissal was mandated, this court implicitly concluded that the purpose of the statute was served because the allegations against Urbitran were freshly made and should be weeded out unless supported by the required affidavit. The statutory purpose, therefore, of weeding out meritless claims early in the litigation, applies in no lesser way to Transit's third-party complaint that preceded the direct complaint of plaintiff. More importantly, as the Burt court noted, the actual language of the statute applies to a plaintiff's obligation to file and serve the affidavit in the first instance. Burt, supra, 339 N.J.Super. at 305, 771 A.2d at 688. Thus, a literal reading of the AMS and a conclusion that it applies to third-party complaints in general fosters the legislative purpose of the statute.
In addition, unlike the cross-claimant in Burt, Transit was not relying upon plaintiff's satisfaction of the affidavit requirement when it filed its third-party complaint. A claim for indemnification is routinely asserted in the context of the original litigation pursuant to R. 4:7-5(b) or R. 4:8-1. This serves the purposes of the entire controversy doctrine and judicial economy, and our courts have noted that such a claim "should be asserted in the original action." Mettinger v. Globe Slicing Mach. Co., Inc., 153 N.J. 371, 387, 709 A.2d 779, 787 (1998). However, such a claim only accrues when the plaintiff recovers a judgment against the indemnitee, McGlone v. Corbi, 59 N.J. 86, 94-95, 279 A.2d 812, 816 (1971); the obligation to defend may arise at some earlier point in time.
In the matter at hand, plaintiff may have never chosen to amend his complaint to include Urbitran as a direct defendant; in other factual contexts, such a decision may be more likely than it was in this particular case. If plaintiff's amended complaint had never been filed, Transit's indemnification claim would have had continued vitality and may not have been prosecuted until some later date. Thus, Urbitran would have been a party to the action only on the strength of the third-party complaint, one that alleged contractual indemnification based upon a breach of professional standards, and Urbitran would never have been served with any affidavit of merit. Its participation in the case would nevertheless be mandated by the fact that it would need to defend against any assertion of its own negligence, and, more importantly, as explained below, its need to have the ultimate factfinder assess some percentage of negligence against Transit. The Appellate Division has recognized that the AMS "was intended not only to insulate a licensed professional from the possibility of responding in damages unless an Affidavit of Merit is timely filed, but also to insulate them from the expense and inconvenience of litigation." Burt, supra, 339 N.J.Super. at 308, 771 A.2d at 690.
Based upon the language of the statute itself, and the legislative purposes it serves, this court must conclude that the AMS applies to the filing of a third-party complaint when the cause of action pled requires proof of malpractice or professional negligence. And, the obligation rests upon the third-party plaintiff to meet the requirements of the statute by filing a timely affidavit of merit. The only remaining issue to resolve is whether the AMS applies to Transit's cause of action in this particular case.
C. Applicability of the Affidavit of Merit Statute to the Instant Matter
Transit argues that its claim is for indemnification pursuant to the contract between it and Urbitran and is not subject to *69 the AMS at all. The question of whether the statute applies to a contractual claim was the subject of some dispute prior to the Supreme Court's decision in Couri v. Gardner, 173 N.J. 328, 801 A.2d 1134 (2002). In Couri, plaintiff sued a psychiatrist he had retained as an expert witness in a child custody dispute. The plaintiff alleged the defendant breached his contract with the plaintiff by disseminating his expert report to the plaintiff's wife and the child's guardian ad litem. The trial court dismissed the complaint because of the plaintiff's admitted failure to file an affidavit of merit, noting that the action, although framed as a breach of contract suit, was actually a malpractice action. In a split decision, the Appellate Division affirmed. Id. at 331, 801 A.2d at 1135-36.
The Supreme Court agreed with the dissent in the appellate panel and concluded that no affidavit was required. However, in doing so, Justice Zazzali, writing for the Court, took the opportunity to resolve the split in the Appellate Division as to whether the AMS ever applies to contractual claims. Id. at 335, 801 A.2d at 1138. The Court reasoned that the language of the statute itself was the starting point for the analysis. By its terms, the AMS applies to causes of action for "malpractice or negligence." Thus, regardless of the label applied to the cause of action in the pleading, "if the underlying factual allegations of the claim require proof of a deviation from the professional standard of care for that specific profession," then an affidavit of merit is necessary. Id. at 341, 801 A.2d at 1141. Concluding that the plaintiff's claim against his expert witness did not require such proof, the Court ruled that an affidavit of merit was not necessary. Id. at 330, 801 A.2d at 1135.
In this matter, it is clear from the very language of the contractual indemnity provision that Transit would have to prove "malpractice or negligence." The provision requires Urbitran to defend and indemnify Transit against all "suits, claims, demands, or damages, ... but only to the extent they arise out of any act, error or omission, or failure to exercise such care as is customary in the profession" (emphasis supplied). Since plaintiff's complaint has been dismissed, and he could not offer proof of a breach of professional standards, the burden would be solely upon Transit to prove such a breach. Under the holding in Couri, an affidavit of merit would be a prerequisite to such a cause of action.
The Supreme Court, however, initiated the analysis in Couri with a recognition that the nature of the injury alleged in any plaintiff's complaint must be an action for "damages for personal injuries, wrongful death or property damage" in order for the AMS to apply. The Court considered this first element of the statute as the "nature of the injury" element. Id. at 334, 801 A.2d at 1138. In considering the "nature of the injury" to the plaintiff in Couri, supra, the Court noted that at oral argument, the plaintiff had "narrowed his request for damages to the $12,000 that he paid to defendant for the report and any incidental costs incurred in the matrimonial action resulting from the necessity of filing motions based on defendant's dissemination of the report." The Court then concluded that because the plaintiff was not seeking "damages for personal injuries, wrongful death, or property damage", the claim did not fall within the first element of the AMS. Thus, "the statute (did) not apply to plaintiff's claim." Id. at 335, 801 A.2d at 1138. The Court, thereafter, proceeded to continue the analysis in order to clarify whether the AMS should ever apply to a breach-of-contract claim.
Thus, the question presented is whether Transit's claim for contractual indemnification *70 against Urbitran is a claim for "damages for personal injuries, wrongful death or property damage." If not, then the AMS does not apply in the first instance regardless of whether the claim was initiated as a cross-claim or, as here, a third-party complaint. Since the Supreme Court's decision in Mantilla v. NC Mall Assocs., 167 N.J. 262, 770 A.2d 1144 (2001), unless explicitly provided for in the contractual language, an indemnitor cannot be held responsible to indemnify an indemnittee for the negligence of the indemnitee. In Azurak v. Corporate Prop. Investors, 175 N.J. 110, 113, 814 A.2d 600, 601 (2003), the Court reiterated the bright line test enunciated in Mantilla, supra. In the contractual language at issue here, Urbitran has not agreed to indemnify Transit for Transit's own negligence; thus, Transit's claim pursuant to the contract is limited to the costs of defense in the event Transit is held to be solely without fault.
In Mantilla, supra, the Court addressed the issue succinctly. "We hold that absent explicit contractual language to the contrary, an indemnitee who has been found to be at least partially at fault may not recover the costs of its defense from an indemnitor." Mantilla, 167 N.J. at 264, 770 A.2d at 1145. The Court further considered that absent some explicit contractual language, the costs incurred in defending claims of the indemnitee's own negligence must abide by the "after-the-fact" approach adopted in Cent. Motor Parts Corp. v. E.I. duPont de Nemours & Co., 251 N.J.Super. 5, 596 A.2d 759 (App.Div.1991). In short, only if the indemnitee is free of active wrongdoing regarding the plaintiff's injury, and has tendered the defense to the indemnitor at the start of the litigation, can the indemnitee recover counsel fees and other defense costs. Mantilla, supra, 167 N.J. at 273, 770 A.2d at 1151. Thus, the claim made by Transit, based upon the language of the agreement, is for the costs of defense in the event it is found to be faultless as to plaintiff. This is the "nature of the injury" alleged by Transit in its third-party complaint against Urbitran.
Whether Transit's inchoate claim for defense costs pursuant to the contractual language of indemnification requires compliance with the AMS, therefore, depends upon whether such an "injury" is "property damage" within the language of the statute. If so, Transit's failure to file an affidavit of merit would defeat its claim; if not, then Transit may proceed to introduce evidence of Urbitran's negligence and if Transit is held to be free of negligence, it may recover its costs of defense under the contract.
Early jurisprudence under the AMS has conclusively recognized that the "property damage" language of the statute includes a claim for money damages. "Malpractice or negligence committed by architects, engineers, or attorneys may very well result in damage to real and personal property. Personal property embraces everything that may be tangible or intangible such as a chose in action. The right or claim to `money damages ... is a property right ... beyond question.'" Cornblatt, supra, 303 N.J.Super. at 86, 696 A.2d at 68 (citations omitted). Undoubtedly, Transit's claim implicates both intangible and tangible property rights, i.e. the right to assert a cause of action against Urbitran compelling it to provide a defense to plaintiff's claim and, failing that, the recoupment of defense costs incurred and at this point undetermined. This "property damage" claim, therefore, is unlike the "nature of the injury" claimed in Couri, supra, 173 N.J. at 335, 801 A.2d at 1138. There, the plaintiff's initial claim for compensatory and punitive damages was narrowed and limited solely to the compensatory damage *71 associated with the costs that the plaintiff paid to the defendant for the furnishing of the report. That injury thus became a finite sum of money already paid by the plaintiff to the defendant and for which recompense was sought. The Supreme Court concluded it was not a "property damage" claim within the context of the AMS.
Here, Transit seeks to assert a cause of action against a third-party, Urbitran, not for any monies already paid by Transit to Urbitran for services provided. Instead, Transit's claim is for the actual defense and/or the yet unspecified defense costs associated with plaintiff's claims against Transit. The "nature" of that injury, therefore, is a claim for property damage within the meaning of the AMS. Thus, this court concludes that a claim for contractual indemnification that relies upon proof of professional negligence or malpractice by a licensed professional is subject to the requirements of the AMS when it is first alleged in a third-party complaint.
Transit may point to other similar situations in which our courts have held that the failure or inability of a plaintiff to recover against the indemnitor directly has not foreclosed the indemnitee from being allowed to assert contractual claims for indemnification. In S.P. v. Collier High Sch., 319 N.J.Super. 452, 725 A.2d 1142 (App.Div.1999), the court considered the effect of the plaintiff's failure to comply with the 90-day notice provisions of the Tort Claims Act upon the defendant's third-party claim against a public entity for contribution and indemnification. The court concluded that such a claim could be asserted despite the failure on the part of the plaintiff and the defendant/third party plaintiff to comply with the required notice provisions. Citing to Mettinger, supra, 153 N.J. at 387, 709 A.2d at 786-87 , the court noted that the claim for indemnification accrues after the expiration of the statutory notice provisions applicable to the plaintiff's claim. Id. at 475, 725 A.2d at 1153. Despite the overriding legislative purpose contained in the Tort Claims Act that requires prompt notice to public entities of any claims made against them, the court concluded that a direct defendant should still have the benefits of pursuing a claim for contribution and indemnification against a public entity because the existence of the defendant's claim was not dependent upon the plaintiff's cause of action or the statutory notice provisions precedent. Id. (citing Markey v. Skog, 129 N.J.Super. 192, 204, 322 A.2d 513, 519-20 (Law Div.1974)).
This case, however, is distinguishable from S.P. in one important aspect. It is not the plaintiff's failure to comply with the AMS that has resulted in the dismissal of Transit's third-party complaint for indemnification. It is Transit's failure to comply with the statute that has caused such a result. The defendant in S.P. should not be penalized in asserting claims for indemnification and contribution because of the plaintiff's failure to comply with the notice provisions because the defendant's claim, which accrues thereafter, should not be held hostage to the whim of the plaintiff's compliance with the statute. Id. (citing Perello v. Woods, 197 N.J.Super. 539, 546-47, 485 A.2d 350, 353-54 (Law Div.1984)). Although the court in S.P., supra, also concluded that the "third-party complaint can be filed without a prior notice," that was grounded on the provisions of the Tort Claims Act itself. Id. at 473, 725 A.2d at 1152. N.J.S.A. 59:8-8 provides that the notice to the public entity must be presented "not later than the ninetieth day after accrual of the cause of action." Since the defendant's third-party claims did not accrue until after *72 the notice provisions, the express language of the statute did not require a separate notice from the defendant to the public entity in order to assert the claims for contribution and indemnification. Here, the provisions of the AMS and the requirement of filing an affidavit are triggered upon the third-party defendant's answer being filed. Transit chose to implead Urbitran and thus set into motion the requirement to satisfy the AMS. Thus, it is Transit's failure, and not plaintiff's that has led to the dismissal of its third-party complaint.
Transit may also look to Dai v. Cmty. Med. Ctr., 295 N.J.Super. 206, 684 A.2d 991 (App.Div.1996), certif. denied, 148 N.J. 460, 690 A.2d 608 (1997), for support of its position. There, the court considered the ability of a defendant to obtain contractual indemnification from a co-defendant, a charitable institution, even though the amount of indemnification exceeded the statutory limits contained in N.J.S.A. 2A:53A-7. After settling the plaintiff's claim for $150,000, and after the co-defendant Community Medical Center's refusal to enter into contribution for the settlement, the defendant New Jersey Automatic Door pursued its claim for indemnification pursuant to its contract wherein the hospital agreed to indemnify the company against all claims except those occasioned by the company's sole negligence. The trial judge limited the hospital's exposure to that contained in N.J.S.A. 2A:53A-7, $10,000 plus counsel fees. Recognizing the purpose of the statute was to limit claims for beneficiaries of the charitable entity, the court concluded that such a statutory limit did not apply to a contractual indemnification claim brought by a co-defendant that was not a recipient of the charitable entity's acts. "The Act (N.J.S.A. 2A:53A-7) immunizes the [hospital] from `tort liability' to beneficiaries, not from contract liability to non-beneficiaries." Dai, supra, 295 N.J.Super. at 209, 684 A.2d at 993. Thus, even though the underlying basis for the indemnification, i.e., plaintiffs negligence claim, would have barred direct recovery by plaintiff against the hospital, the contractual nature of co-defendant's cause of action was not within the ambit of the charitable immunity conferred by the statute.
Once again, however, the case is distinguishable from the one at hand. Here, the court has determined that Transit's cause of action is entirely within the parameters of the AMS. Hence, it had a duty to comply with the statute and has failed to do so. In Dai, the charitable immunity statute did not apply to the contractual claim at all because the cross-claimant was not a beneficiary of the charitable works of the hospital. Thus, the statute could not work to deny the cross-claimant its independent statutory and contractual right to contribution and indemnification.
Although Transit's claim for contractual indemnification must be dismissed for the reasons set forth above, it still maintains its right to be free of responsibility for anything more than its share of negligence should plaintiff prove and gain a recovery. In this respect, Transit's request to maintain Urbitran on any jury verdict sheet is adequately addressed by the rationale utilized by the court in Burt, supra, 339 N.J.Super. at 307, 771 A.2d at 689-90. That is, by allowing Transit to diminish its own liability by proving the negligence of Urbitran and allowing the jury to apportion same, Urbitran will not be liable to either Transit or plaintiff, and Transit will not become responsible for a share of plaintiff's damages greater than Transit's own negligence warrants. Plaintiff, likewise, will be unable to recover against Urbitran because he failed to comply with the affidavit of merit statute. The logic of the analysis applies despite this court's *73 dismissal of Transit's claim for contractual indemnification. That conclusion is supported further, under the facts of this case, because of Transit's status as a public entity. Pursuant to N.J.S.A. 59:9-3.1, Transit can only be liable for its share of negligence among all adjudicated joint tortfeasors. The legislative purposes of that statute, therefore, would be thwarted as well if Urbitran was not included upon a jury verdict sheet, presuming, of course, Transit could prove Urbitran was indeed negligent.
Urbitran's motion to dismiss Transit's claims for indemnification and defense is therefore granted based upon Transit's failure to comply with the AMS. The court has executed an order consistent with this opinion.
NOTES
[1] The reasons for the dismissal are not particularly relevant to the remaining issues presented. However, Porzio is not a licensed professional and his report could not be considered as having satisfied the requirements of the Affidavit of Merit Statute. It is undisputed that neither plaintiff, nor Transit, ever served a timely affidavit of merit upon Urbitran.
[2] The third-party complaint does not assert a claim for contribution against Urbitran. Pursuant to N.J.S.A. 59:9-3.1, Transit's share of liability for any damages is limited to its share of negligence among joint tortfeasors.
[3] Although the claims made in Burt included a claim for indemnification amongst joint tortfeasors, the decision of the court did not directly address the issue. The decision of the court was based solely upon an examination of the relationship between the issues of contribution, comparative negligence and the plaintiff's claim.