DUCRE *v.* SPARROW-KROLL LUMBER CO.

1. PRINCIPAL AND AGENT — MASTER AND SERVANT — TORTS OF
   AGENT—SCOPE OF AUTHORITY.
   An employer is not liable for wilful and malicious acts of an
   employé not authorized or ratified.[1]

2. MASTER AND SERVANT—ASSAULT BY CLERK.
   A corporation conducting a store, of which it employed a man-
   ager and clerk, is not liable for injuries caused by its clerk,
   whose only duties were to wait upon customers and take care
   of the stock, in assaulting and striking plaintiff with a ham-
   mer, where plaintiff's testimony indicated that the assault
   was unprovoked and unwarranted, defendant's testimony
   showing that plaintiff used improper and obscene language
   in the presence of women, and the clerk after ordering plain-
   tiff out of the store attacked him.

Error to Houghton; Streeter, J.   Submitted January
13, 1911.  (Docket No. 84.)   Decided December 29, 1911.
Rehearing denied March 13, 1912.

Case by Joseph Ducre against the Sparrow-Kroll Lum-
ber Company and Charles B. Kröll for personal injuries.
Judgment for plaintiff against said company only and
it brings error.   Reversed, and no new trial granted.

*Allen F. Rees* (*C. B. Grant,* of counsel), for appel-
lant.

*P. H. O'Brien* (*E. F. Le Gendre,* of counsel), for ap-
pellee.

McALVAY, J.   Plaintiff brought suit against both de-
fendants to recover for injuries alleged to have been
caused to him by an assault committed upon him by

[1] For various phases of question of master's liability for assaults
by servants, see notes in 14 L. R. A. 737, 6 L. R. A. (N. S.) 567; 9
L. R. A. (N. S.) 1175; 12 L. R. A. (N. S,) 1155.

Charles Struthers, who was an employé of defendant company. Defendant company was engaged in lumbering operations at Kenton, Mich., and, in connection with its business, conducted a general store at that place. The general manager of defendant company in charge of all its business was William Kroll. The defendant Charles B. Kroll was the manager of the store. Charles Struthers was a clerk in this store, employed to sell goods and wait upon customers. On the day plaintiff was hurt, he came to the store of defendant company in a state of intoxication, and began to be familiar with a woman who was present with her little child, putting his hand upon her shoulder and talking to her. He used profane language in the presence of women, and, it is claimed, he also used obscene language which is unprintable. This conduct continued for some time while plaintiff was walking around in the store. He was not in the store as a customer or by invitation. He claims on the trial he was there to get a job for a friend. After a time the clerk, Struthers, as plaintiff claims, ordered him to go out, and put his hand on his arm, and plaintiff, having become quiet, was standing by the stove, when the clerk suddenly attacked him with a hammer, knocking him down. He was then put out a side door. About half an hour later, he went to a doctor's office, and was then so intoxicated that the doctor did not wish to do anything with him that morning. The blow plaintiff received fractured his skull. This was treated by the doctor on the following day. He was under the doctor's care for four months, and was then discharged.

In both counts of his declaration, plaintiff charges that defendant Charles B. Kroll, as manager of the store, and the clerk, Struthers, both acting for defendant company, committed this assault, and that Charles B. Kroll directed Struthers to use the hammer upon plaintiff. In both counts plaintiff bases his claim upon the participation in the assault of the manager of the store. Struthers was not made a party defendant.

The jury returned a verdict in favor of the plaintiff and against defendant Sparrow-Kroll Company only.

It will not be necessary to consider all of the errors relied upon by defendant company, which has brought the case to this court for review. The verdict of the jury has eliminated any consideration of the connection of the manager of the store, Charles B. Kroll, with the assault, or any liability of the appellant by reason of his conduct. The appellant can therefore be liable only because of imputed responsibility.

In order to make defendant company liable for the assault upon plaintiff, it must be held that it was committed by Struthers acting as clerk of defendant company, and within the scope of his employment. If the testimony of plaintiff and his principal witness, Connor, is true, then the assault on the part of Struthers with the hammer was wanton, wilful, and intentional, and no other conclusion can be drawn from all of the evidence in the case.

Under such circumstances, can this court hold that Struthers was acting within the scope of his employment, express or implied?

In determining the question of the liability of the master for the torts of his servant, committed while in his employment, the line appears to be drawn by the authorities between those acts negligently or unskillfully performed, and those done by the servant in a wanton violation of law.

In an early case this court held:

" To render the doctrine of ' *respondeat superior* ' applicable, the injury must arise in the course of the execution of some service, lawful in itself, but negligently or unskillfully performed; for a wanton violation of law by a servant, although occupied about the business of his employer, such servant is alone answerable. The general proposition that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do seems to be too large. His liability depends upon the nature of the employment,

the occupation of the person employed, and the control or authority of the employer over the person employed, as well as over the manner of the execution of the employment, and also upon the occasion and nature of the injury." *Moore* v. *Sanborne*, 2 Mich., at page 530 (59 Am. Dec. 209).

In a later case this court reaffirmed this doctrine. Mr. Chief Justice CAMPBELL, speaking for the court, said:

"The acts complained of were done in the regular course of their employment, and not by wilful wrong. In such cases the master is bound to keep his servants within their proper bounds, and is responsible if he does not. The law contemplates that their acts are his acts, and that he is constructively present at them all. There are many cases of wilful misconduct for which an employer will not be liable, because, in such cases the wrongdoers may be regarded as having renounced his service to that extent. * * * But where the act is not wilful, and is done in the regular course of the employment, there is quite generally a distinct liability, resting on the grounds of an implied agency." *Smith* v. *Webster*, 23 Mich., at page 299.

Later, in a case where plaintiff, a foot passenger, sued for injuries, caused by a boy, who was a servant of defendant, driving a horse over him, Mr. Justice COOLEY, speaking for this court, said:

"The defense then requested the court to charge that the liability of the master does not ensue when the servant has intentionally or recklessly stepped aside from his employment to commit a tort, which the master neither directed in fact nor could be supposed, from the nature of the employment, to have authorized or expected the servant to do. This instruction the judge refused to give, but instructed the jury instead that if the boy 'drove in a careless and reckless manner he would be acting within the scope of his master's employment; but that if he wantonly, wilfully, and intentionally ran over the plaintiff he would not be acting within the scope of his master's authority. But if he carelessly, unintentionally, and accidentally ran over the plaintiff, then the plaintiff should recover.'

"This instruction was all the defendant could reasonably ask. It stated the law correctly and fairly. If it was a case of intentional injury, defendant was not responsible." *Cleveland* v. *Newsom*, 45 Mich. 62 (7 N. W. 222).

While the facts were not identical with those in the instant case, the principle of law involved is the same.

A few authorities are cited where the courts have, in applying the doctrine of *respondeat superior*, held the employer liable for wilful and malicious acts by an employé, on the ground that they were within the scope of his employment. Such extreme views have never been entertained by this court.

The case of *Zart* v. *Sewing Machine Co.*, 162 Mich. 387 (127 N. W. 272), was a case of trespass *vi et armis*, brought against defendant and a local manager of its business in Detroit, for an assault committed while the said manager of defendant and an employé of defendant were forcibly taking a sewing machine from plaintiff's home. That he was the managing salesman of defendant, and so dealt with plaintiff in making the sale of the sewing machine to her, signing his name as such to the receipt for part payment, was undisputed. His authority in that business seems to have been plenary. He went to her home in that capacity to take the machine away from her. Although defendant company denied that the machine was its property, and it received no benefit from the sale, it was held that a question of fact was presented whether he was acting within the scope of his authority or for his personal benefit. The court, among other things, charged the jury:

"The defendant Singer Sewing Machine Company is not liable, unless you find that it actually owned the machine sold by Brandau to plaintiff."

The jury must have found this fact against defendant company. This court, speaking through Mr. Justice STONE, said:

"We are of the opinion that the case and the charge fall within the doctrine of the case of *Canton* v. *Grinnell,* 138 Mich. 590 (101 N. W. 811)."

This last case cited is another case of trespass *vi et armis,* where a claimed assault was committed by the agents of defendant while removing a piano from plaintiff's residence. Mr. Justice MONTGOMERY, speaking for the court, said:

"The jury were instructed that the defendant would be only liable for those acts which were committed by the two truckmen in doing those things necessary in getting the piano. This instruction sufficiently guarded defendants' rights"—and cited as sustaining that proposition *Smith* v. *Webster, supra.*

The decisions in both these recent cases rest upon the authority of the doctrine laid down in *Smith* v. *Webster, supra,* which brings all of these cases within the cases of *Moore* v. *Sanborne* and *Cleveland* v. *Newsom,* relied upon in this opinion as declaratory of the law in the instant case. In this State our court has never departed from the rule laid down in *Cleveland* v. *Newsom, supra,* and has not adopted the modern rule, so called, which is invoked, and which goes to an extreme which this court is not willing to follow.

The violent and unexplainable assault of the man Struthers upon the plaintiff cannot be defined as recklessness, which is only a high degree of negligence. It was a wanton, wilful, and intentional injury, committed without regard to consequences, and within a narrow margin of having resulted in the crime of manslaughter. Under the circumstances presented by this record, such act cannot be held to have been committed by this man while in the performance of duties for defendant within the scope of his employment; and our conclusion is that, as a matter of law, no liability attached to the appellant, and the court was in error in not so charging the jury, as requested. It follows that other questions raised need no discussion.

The judgment of the circuit court, for the reasons pointed out in this opinion, is reversed, and no new trial is granted.

Moore, Brooke, and Stone, JJ., concurred with Mc-Alvay, J.

Blair, J.  I concur upon the ground that it is not within the scope of a clerk's employment to eject disorderly persons from his employer's store.