NIPPA v BOTSFORD GENERAL HOSPITAL (ON REMAND)

Docket No. 229113. Submitted April 21, 2003, at Lansing. Decided July 3, 2003, at 9:05 A.M. Leave to appeal sought.

Sally Nippa, as personal representative of the estate of Robert Nippa, deceased, brought an action in the Oakland Circuit Court against Botsford General Hospital, alleging medical malpractice as a result of the treatment of the decedent in the defendant hospital by two doctors who are board-certified in infectious diseases and one doctor who is board-certified in general surgery. The plaintiff filed with the complaint an affidavit of merit, as required by MCL 600.2912d(1), signed by a doctor who is not board-certified in either general surgery or infectious diseases. The court, Jessica R. Cooper, J., granted the defendant's motion for a more definite statement, and the plaintiff filed a second amended complaint. The defendant moved for involuntary dismissal, alleging that the affidavit of merit filed by the plaintiff did not comply with the statutory requirements. The court granted the motion, disagreeing with the plaintiff's argument that because the hospital was the only named defendant in the action, the plaintiff was not required to produce an affidavit of an expert who was board-certified in the areas of infectious diseases and general surgery. The plaintiff appealed. The Court of Appeals affirmed on the basis that the Legislature did not intend that the word "party" in MCL 600.2169 be interpreted narrowly to denote solely a party to the record proceeding. 251 Mich App 664 (2002). Chief Judge WHITBECK, dissenting, stated that the statute should be applied as written, and, therefore, the order granting summary disposition should be reversed. The Supreme Court, in lieu of granting the plaintiff's application for leave to appeal, vacated the judgment of the Court of Appeals and remanded the matter to the Court of Appeals for reconsideration in light of Cox v Flint Bd of Hosp Mgrs, 467 Mich 1 (2002). 468 Mich 881 (2003).

On remand, the Court of Appeals held:

The Cox decision supports the prior majority decision in this matter that held that a plaintiff must attach to a medical-malpractice complaint against an institutional defendant an affidavit of merit executed by a physician who specializes or is board-certified

in the same specialty as the health professionals on whose conduct the action is based. The order of the trial court granting summary disposition in favor of the defendant must be affirmed.

The logic of the *Cox* decision, which held that a hospital may be vicariously liable for the negligence of its agents, that vicarious liability arises because the hospital is held to have done what its agents have done, and that, even when the hospital is the only named defendant, the issue remains whether the hospital's agents violated the standard of care applicable to them, requires a holding in this matter that the standard of care applicable to the hospital is the same standard of care applicable to the physicians named in the complaint. The term "party" in MCL 600.2169(1)(a) is broad enough to include party plaintiff, party defendant, and the alleged negligent party as stated in the plaintiff's complaint.

Affirmed.

WHITBECK, C.J., dissenting, stated that the logic of the *Cox* decision supports the result of the majority only if the term "party" in MCL 600.2169 includes the term "agent." Such a construction is contrary to the explicit language of *Cox*. The word "party" does not include within its meaning the word "agent." The order of the trial court should be reversed and the matter should be remanded.

ACTIONS — MEDICAL MALPRACTICE — AFFIDAVITS OF MERIT — WORDS AND PHRASES — PARTY.

A plaintiff who brings a medical-malpractice action against a hospital only must file with the complaint an affidavit of merit executed by a physician who specializes or is board-certified in the same specialty as the health professionals on whose conduct the action is based; the term "party," as used in MCL 600.2169(1)(a) is broad enough to include the party plaintiff, party defendant, and the alleged negligent party as stated in the complaint (MCL 600.2912d[1]).

*Worsham & Victor, P.C.* (by *Richard B. Worsham* and *John J. Schutza*), for the plaintiff.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Ronald S. Lederman, Gerard J. Andree,* and *Alexandra C. Akas*), for the defendant.

ON REMAND


Before: WHITBECK, C.J., and O'CONNELL and METER, JJ.

O'CONNELL, J. This case is before us on remand from our Supreme Court "for reconsideration in light of *Cox v Flint Bd of Hosp Mgrs*, 467 Mich 1 [; 651 NW2d 356] (2002)." *Nippa v Botsford Gen Hosp*, 468 Mich 881 (2003). In our opinion, *Cox* supports our decision in *Nippa v Botsford Gen Hosp*, 251 Mich App 664; 651 NW2d 103 (2002) (*Nippa I*), which the Supreme Court, in lieu of granting leave to appeal, vacated in its order of remand. That is, a plaintiff must attach to a medical-malpractice complaint against an institutional defendant an affidavit of merit executed by a physician who specializes or is board-certified in the same specialty as the health professionals on whose conduct the action is based. Thus, we come to the same conclusion as we did in our previous decision where we affirmed the trial court's order granting summary disposition for defendant.

I. OUR PREVIOUS DECISION IN *NIPPA I*

In *Nippa I*,[1] plaintiff argued that

pursuant to the plain language of MCL 600.2169(1)(a),[2] Dr. Markowitz was competent to testify against defendant . . . . [P]laintiff maintained that because the hospital, the only

---

[1] For a complete statement of the underlying facts in the present case, see *Nippa I, supra* at 665-667.

[2] According to MCL 600.2912d(1), "the plaintiff in an action alleging medical malpractice . . . shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section

named defendant to the action, was not board certified . . . , plaintiff was not required to produce an expert witness with like qualifications [as the doctors she alleged were negligent in her complaint]. [*Id.* at 666-667.]

We concluded that plaintiff's affidavit of merit in this medical-malpractice case was insufficient because it was not signed by a doctor who specializes or is board-certified in the same specialty as the doctors on whose conduct the action was based. MCL 600.2169; see also *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 218-219, 220; 642 NW2d 346 (2002), cited in *Nippa I, supra* at 672-673. We disagreed with plaintiff's position then and we continue to do so now.

## II. OUR SUPREME COURT'S DECISION IN *COX*

In *Cox, supra,* our Supreme Court held that a hospital may be held vicariously liable for the acts of its agents. *Cox, supra* at 11. "[A] hospital's vicarious liability arises because the hospital is held to have done what its agents have done." *Id.* at 15. Even when the hospital is the only named defendant, the issue remains whether the hospital's agents violated the standard of care applicable to them. *Id.* at 5, 14-15. Our Supreme Court stated:

---

2169." MCL 600.2169(1)(a) provides that a medical expert witness must meet the following criteria (among others) that are at issue in this case:

If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

Vicarious liability is "indirect responsibility imposed by operation of law." As this Court stated in 1871:

"[T]he master is bound to keep his servants within their proper bounds, and is responsible if he does not. *The law contemplates that their acts are his acts, and that he is constructively present at them all.*" [*Smith v Webster*, 23 Mich 298, 299-300 (1871) (emphasis added).]

In other words, the principal "is only liable because the law creates a practical identity with his [agents], so that he is held to have done what they have done." *Id.* at 300. See also *Ducre v Sparrow-Kroll Lumber Co*, 168 Mich 49, 52; 133 NW 938 (1911). [*Id.* at 11 (citation omitted).]

### III. ANALYSIS

After reviewing our Supreme Court's remand order, we conclude that the Court remanded this case for us to apply the logic of *Cox* to the present facts.

Again, the Court in *Cox* held that under a vicarious-liability theory, a principal " 'is only liable because the law creates a practical identity' " between the principal and its agents. *Id.*, quoting *Smith, supra* at 300. The principal is held to have done what the agent has done. The law contemplates that the agent's acts are the principal's acts and that the principal " 'is constructively present at them all.' " *Id.* Applying the logic of *Cox* to the present case, we hold that the standard of care applicable to the hospital is the same standard of care that is applicable to the physicians named in the complaint. For all practical purposes the hospital stands in the shoes of its agents (the doctors).

Thus, we opine that with regard to vicarious liability, medical-malpractice law applicable to a physician is also applicable to the physician's hospital. Plaintiff

cannot avoid the procedural requirements of the law by naming only the principal as a defendant in a medical-malpractice lawsuit. All procedural requirements are applicable to the hospital in the same manner and form as if the doctor were a named party to the lawsuit. This is so because the law creates a practical identity between a principal and an agent, and, by a legal fiction, the hospital is held to have done what its agents have done. *Id.* It would be absurd to have one set of legal rules for a hospital and another set of legal rules for its agents. See, e.g., *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 142-143, 150; 662 NW2d 758 (2003) (statutory construction should avoid an illogical or absurd result).[3]

Consequently, a plaintiff who sues an institutional defendant such as defendant hospital must premise her claim on vicarious liability because the institution itself is incapable of committing any independent actions, including negligence. *Cox, supra* at 12. Vicarious liability imposes a legal fiction on defendant hospital providing that the principal is only liable because the law creates a practical identity with its agents so that the hospital is held to have done what the agents have done. *Id.* at 11-12. The law treats the principal and the agent as sharing a single identity, transporting the acts of the doctors (the agents) to the hospital (the principal). Just as an institution itself is incapable of committing any independent actions, including negligence, an institution itself is

---

[3] But see *Kelly-Stehney & Assoc, Inc v MacDonald's Industrial Products, Inc*, 254 Mich App 608, 614 n 4; 658 NW2d 494 (2003) (noting our Supreme Court's disapproval of the "absurd result" rule of statutory construction).

incapable of making an averment in an affidavit of merit. Therefore, the term "party" under MCL 600.2169(1)(a) encompasses the agents for whose alleged negligent acts the hospital may still be liable. A plaintiff must submit with a medical-malpractice complaint against an institutional defendant an affidavit of merit from a physician who specializes or is board-certified in the same specialty as that of the institutional defendant's agents involved in the alleged negligent conduct. *Cox, supra* at 11-12, 15; *Nippa I, supra* at 672-673; see also MCL 600.2912d(1).

### IV. THE DISSENTING OPINION

The dissenting opinion[4] faults the majority opinion for "rewrit[ing] MCL 600.2169 to make it less 'illogical . . . .' "[5] *Post* at 409. Unfortunately, the dissent's con-

---

[4] We agree with the dissenting opinion that the facts of *Cox* do not neatly apply to the present case, see *post* at 405, but because our Supreme Court's order on remand asks us to apply *Cox*, we are endeavoring to do so. See *Nippa v Botsford Gen Hosp*, 468 Mich 881 (2003).

[5] While we do not believe in judicial activism, we do believe that the role of the judiciary is more than that of a simple statute-reading machine that spits out the plain language of what is put in. Cf. *Sington v Chrysler Corp*, 467 Mich 144, 161-162; 648 NW2d 624 (2002) ("[S]tare decisis is not to be applied mechanically to forever prevent the Court from overruling earlier erroneous decisions determining the meaning of statutes. Rather, it is our duty to re-examine a precedent where its reasoning . . . is fairly called into question.") (internal quotation marks and citations omitted).

Judging is an art. It is not best served by reaching absurd results or by reaching decisions that lack common sense or violate the intention of the Legislature. We note that writing is "[t]he bare transmission of data" from the writer to the reader. Irving Younger, *Culture's the Thing*, 8 Scribes J Leg Writing 137, 138 (2001-2002). It is simply "a mechanical function requiring only a command of grammar, syntax, and vocabulary. Though grammar, syntax, and vocabulary can be programmed into a computer," no computer will ever be able to replace the role of judge in our society, and no computer or mechanical device can function at the level of a judge. *Id.* "The reason is that there are demesnes of [judging] closed to computers," mechanical devices, "and to those who aspire to no more

clusion that plaintiff is not required to file an affidavit
signed by a board-certified specialist in the same spe-
cialty as defendant's doctors is exactly contrary to the
clear intent of MCL 600.2169(1)(a). See *Frankenmuth
Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515;
573 NW2d 611 (1998) (Legislature's intent is para-
mount in statutory construction); *Nippa I, supra* at
673 (the purpose of MCL 600.2912d[1] and 600.2169 is
to ensure trustworthy medical expert testimony and
to discourage frivolous lawsuits). The dissent's
strained reading of the statute actually defeats the
true purpose of the statute. In *Tate, supra* at 218, this
Court held, "Subsection 2169(1)(a) specifically states
that an expert witness must 'specialize[] at the time
of the occurrence that is the basis for the action' in
the same specialty as the defendant physician."[6]

The English language with all its nuances is not as
precise or logical a language as the dissenting opinion
advocates. The conceptual difficulty that bedevils the
dissenting opinion is its dogged, literalist application
of a generic term, "party," to a specific set of facts. By
employing an unrealistic approach, the dissent allows
itself to wear blinders, losing all peripheral vision and
resulting in a collision with reason and common
sense. See *Houghton Lake, supra*; *Hoste v Shanty
Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360
(1999) (statutory construction should avoid rendering
a statute nugatory). The named parties to this lawsuit
have asked us to give meaning to § 2169 as it relates

---

than a computer's function." *Id.* Computers can reach absurd or illogical
results on the basis of the process chosen to program the computer.
Reaching an absurd or illogical result is best left to mechanical devices. In
our opinion, the judge's role is significantly different.

[6] *Tate* involved a medical-malpractice action with a hospital as the sole
defendant. *Id.* at 213-214.

to the term "party." In our view, the majority opinion has accomplished this goal with common sense and indisputable logic. After reading our opinion, the reader and the practitioner have a logical rule to follow when addressing the requirements of § 2169.[7]

Indeed, the dissent concludes that the proper definition for the term "party" in § 2169 is "party defendant." *Post* at 402. Of course, the phrase "party defendant" does not appear in the statute, but that does not stop the dissenting opinion from constructing an impregnable circle that leaves unanswered the issue how our Supreme Court's opinion in *Cox* applies to the present case.

We would like to make clear what § 2169 does *not* state. It is clear that the statute does not state "party defendant" or "party of record" as the dissenting opinion would have one believe.[8] Nor does it say "party

---

[7] We repeat that the unavoidable result of the dissenting opinion's analysis is that any plaintiff can avoid the primary affidavit-filing procedural requirement of MCL 600.2912d(1) and MCL 600.2169 by filing a lawsuit against an institutional entity only. Clearly, this is not what the Legislature intended. See *Frankenmuth Mut Ins Co, supra* (the Legislature's intent is paramount in statutory construction); see also *Hoste, supra; Nippa I, supra* at 673.

[8] The dissenting opinion's attempt to amend the plain meaning of the statute may be attributable to the fact that the term "party" has multiple meanings. We note in the following example that the term "party" has three separate meanings:

The "party" of the first part would like to know if the "party" of the second part would like to attend the "party" at the courthouse restaurant on Friday evening.

In *Cavalier Mfg Co v Employers Ins of Wausau*, 211 Mich App 330, 341; 535 NW2d 583 (1995), remanded 453 Mich 953 (1996), we concluded that the phenomenon of identical words having different meanings (i.e., a homonym), even in a single document, was neither unique to that case nor to the elasticity and inherent limitations of the English language. *Random House Webster's College Dictionary* (2001) contains twelve separate definitions for the term "party." As we referenced in *Nippa I, supra* at 673-

plaintiff." It does not say "agent for party defendant," and it does not say "agent for party plaintiff." Nor does the statute say that an agent for another hospital may qualify as an expert medical witness under § 2169 and MCL 600.2912d(1) in a medical-malpractice lawsuit against a hospital only. Nor does § 2169 say that an affidavit of merit from any health-care professional may be filed when a hospital is the sole defendant.  What § 2169 does say is "party." As we previously stated, we conclude that the term "party" is broad enough to include party plaintiff, party defendant, and the alleged negligent party as stated in the complaint by the plaintiff.[9] The negligent person or entity can still be referred to as a party for the practical purposes of the statutes' procedural requirements without offending the English language or violating the rules of logic. The majority chooses to resolve this linguistic problem with a straightforward, common-sense approach. In this manner, we accomplish the task given to this Court—application of the vicarious-liability doctrine described in *Cox* to the interpretation of the term "party" in the affidavit-filing requirement of the medical-malpractice statutes.[10]

---

677, Black's Law Dictionary (6th ed) includes definitions of the phrases adverse party, aggrieved party, formal party, indispensable party, innocent party, interested party, necessary party, nominal party, party in interest, party opponent, proper party, and real party in interest, among others.

[9] The dissenting opinion, *post* at 398, faults the majority opinion for "amend[ing] MCL 600.2169 so that the term 'party' in that statute includes the term 'agent.' " We find no support in the law or the majority opinion for the dissenting opinion's conclusion. We conclude only that the term "party" encompasses the negligent party as set forth in the complaint filed by plaintiff.

[10] We further note that it takes the dissenting opinion numerous pages to attempt to discern the true meaning of the term "party." If the term was as clear, concise, and logical as the dissenting opinion claims, then no doubt this dilemma could be resolved in a few sentences. See, generally,

In sum, the dissent's ultimate conclusion that any physician can swear to an affidavit of merit when the only defendant is a hospital is not supported by MCL 600.2169(1)(a), especially when one of the primary purposes of the statute is to require a plaintiff's experts to specialize in the same specialty as the physicians that they allege to be negligent. The dissenting opinion's pigeonholed definition of the term "party" destroys the intended purpose and meaning of the statute.

### V. CONCLUSION

In order to commence an action for medical malpractice, a plaintiff is required to file an affidavit of merit. MCL 600.2912d(1). This affidavit must be signed by a doctor who has the same specialty as the doctor who the plaintiff alleges to be negligent. MCL 600.2169(1)(a). Defendant's physicians involved in this matter are board-certified in general surgery and infectious diseases. Plaintiff's expert indicates in his affidavit of merit that he is not board-certified in either specialty; therefore, the trial court properly dismissed the complaint.

Affirmed.

METER, J., concurred.

WHITBECK, C.J. *(dissenting)*. Once again I respectfully dissent. The majority states that it is applying the logic of a recent Michigan Supreme Court opin-

---

*Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999) (statutory interpretation is precluded if the plain language of the statute is clear).

ion, *Cox v Flint Bd of Hosp Managers*,[1] to this case. The legal issue here is whether, under MCL 600.2169, a plaintiff suing a hospital, and *only* a hospital, under a theory of vicarious liability is required to file an affidavit of merit signed by a physician who is board-certified in the specialty or specialties of the agent or agents of the hospital that the plaintiff claims engaged in medical malpractice. One can apply the logic of *Cox* to this legal issue to reach the majority's result only if one is willing to amend MCL 600.2169 so that the term "party" in that statute includes the term "agent." This Court is not a super-Legislature nor should it endeavor to do that which the Legislature did not do in order to make the statute less illogical and thereby more sensible. Accordingly, I would reverse the trial court's grant of involuntary dismissal and remand.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Sally Nippa (Nippa) sued Botsford General Hospital, and *only* Botsford General Hospital, in her capacity as the personal representative of Robert Nippa's estate. In her second amended complaint, Nippa alleged that Botsford was liable for the negligent treatment Drs. Wiley Fan, Gerald Blackburn, and Harris Mainster rendered to Robert Nippa. As the language of Nippa's second amended complaint makes clear,[2] Nippa was proceeding under a theory of vicari-

---

[1] *Cox v Flint Bd of Hosp Managers*, 467 Mich 1; 651 NW2d 356 (2002).

[2] Paragraph 11, relating to Nippa's allegation of negligence in Count II of her complaint, stated:

That at all times relevant herein, defendant, BOTSFORD HOSPITAL, *by its employees, agents, servants, officers and/or representatives,*

ous liability and was attributing the allegedly negligent acts of Drs. Fan, Blackburn, and Mainster, as agents, to Botsford, as the principal.

With her original complaint, Nippa filed an affidavit of merit from Dr. Arnold Markowitz. Botsford sought dismissal under MCR 2.112(L). Although Dr. Markowitz is board-certified in internal medicine, Botsford pointed out that Drs. Fan and Blackburn are board-certified in infectious diseases and Dr. Mainster is board-certified in general surgery; accordingly, Dr. Markowitz's board-certified specialty is not the same as those of Drs. Fan, Blackburn, and Mainster. In essence, Botsford argued that while Drs. Fan, Blackburn, and Mainster were themselves not parties, it was their alleged negligence that was being imputed to the hospital under a theory of vicarious liability. Therefore, Botsford argued, MCL 600.2169(1)(a) required Dr. Markowitz's board-certified specialties to match those of the allegedly offending physicians.

The trial court agreed and granted involuntary dismissal of the second amended complaint. Nippa then appealed the trial court's order granting involuntary dismissal to this Court. The majority of the first *Nippa* panel agreed with Botsford and the trial court, and affirmed.[3] The majority described Nippa's contention as follows:

> [Nippa] raises a novel, yet ultimately unsuccessful, legal argument concerning the proper interpretation of the word

---

owed a duty to the plaintiff's decedent, ROBERT NIPPA, as a primary medical care facility, and that said duty was breached by a deviation from the standard of practice of medicine, proximately causing the damages stated herein . . . . [Emphasis supplied.]

[3] *Nippa v Botsford Gen Hosp*, 251 Mich App 664; 651 NW2d 103 (2002) (*Nippa I*).

"party" in § 2169. Put rather simply, the thrust of [Nippa's]
argument is that the word "party" refers only to those liti-
gants who are parties of record. Therefore, according to
[Nippa], because the board-certified physicians who treated
[Nippa's] decedent are not named in the action, [Nippa], by
virtue of her artful drafting of the second amended com-
plaint, is absolved from complying with the requirements of
§ 2169.[4]

The majority then went on to conclude, in essence,
that the word "party" as used by the Legislature in
MCL 600.2169 did not mean a "party" as defined in
Black's Law Dictionary.[5] The majority supported this
conclusion as follows:

In spite of the unique meaning the word "party" has
acquired in the law, we do not agree with [Nippa] that by
referring to "party," the Legislature indicated its intention
that the requirement that an expert witness share the same
board certification as one he intends to testify against
extend (sic) only to named parties to the record. In the
instant case, a careful review of the second amended com-
plaint reflects that [Nippa] is alleging liability on the part of

---

[4] *Id.* at 672.

[5] The majority in *Nippa I, supra* at 674, quoted the following definition
of a "party" from Black's Law Dictionary (6th ed), p 1122:

"*A person concerned or having or taking part in any affair,
matter, transaction, or proceeding, considered individually.* A
party to an action is a person whose name is designated on record
as plaintiff or defendant. Term, in general, means one having right
to control proceedings, to make defense, to adduce and cross-
examine witnesses, and to appeal from judgment.

Party is a technical word having a precise meaning in legal par-
lance; it refers to those by or against whom a legal suit is brought,
whether in law or in equity, the party plaintiff or defendant,
whether composed of one or more individuals and whether natural
or legal persons; all others who may be affected by the suit, indi-
rectly or consequently, are persons interested but not parties."
[Emphasis supplied; citations and internal quotation marks
omitted.]

[Botsford] under a theory of vicarious liability. As our Supreme Court observed in *Theophelis v Lansing General Hosp*, 430 Mich 473, 483; 424 NW2d 478 (1988) (GRIFFIN, J.), "[v]icarious liability is indirect responsibility imposed by operation of law." Further, a master may not be held liable under a vicarious liability theory where the servant is not liable. *Rogers v J B Hunt Transport, Inc*, 244 Mich App 600, 608; 624 NW2d 532 (2001), lv gtd 465 Mich [903] (2001). This is because the principal has not committed a tortious act, and is therefore not a "tortfeasor." *Theophelis, supra* at 483.

In our view, the acceptance of [Nippa's] interpretation of the statute would "effectively repeal" § 2169, rendering it nugatory and meaningless, an interpretation that this Court must avoid. *Scarsella v Pollak*, 461 Mich 547, 550; 607 NW2d 711 (2000). Similarly, if we were to accept [Nippa's] argument, plaintiffs in medical malpractice actions could routinely avoid the requirements of § 2169 by declining to name individual physicians as defendants. In a different context, our Supreme Court has expressed its dissatisfaction with such gamesmanship, specifically where parties draft pleadings to avoid the procedural medical malpractice requirements. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43-47; 594 NW2d 455 (1999); see also *Stover v Garfield*, 247 Mich App 456, 467-469; 637 NW2d 221 (2001) (O'CONNELL, J., dissenting).[6]

Dissenting, I placed particular emphasis on Justice MARKMAN's statement in *Robertson v DaimlerChrysler Corp*,[7] that "[W]e believe that it is the constitutional duty of this Court to interpret the words of the lawmaker, in this case the Legislature, and *not* to substitute our own policy preferences in order to make the law less 'illogical.' "[8] I stated that, in my view, the majority had disregarded the plain language of the

---

[6] *Id.* at 675-676.

[7] *Robertson v DaimlerChrysler Corp*, 465 Mich 732; 641 NW2d 567 (2002).

[8] *Id.* at 758 (emphasis in the original).

law in order to avoid reaching what it considered to be an absurd result.[9] I noted that the word "party" is a legal term of art that has acquired a particular meaning in the law—quoting Black's Law Dictionary for the proposition that the word party " 'refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant' "—and contended that, while Drs. Fan, Blackburn, and Mainster may be interested persons and may be Botsford's agents, they are *not* party defendants.[10]

I also noted that by, in essence, amending the plain words of the statute, the majority was substituting its policy preferences for those of the Legislature, all to make the statute less illogical.[11] I observed that the majority's policy preference was clear: that a plaintiff should be required to file affidavits of merit signed by board-certified physicians whose specialties match those of the individual physicians who are not parties but for whose alleged negligence the plaintiff seeks to hold a party defendant hospital accountable under a theory of derivative[12] liability.[13] Such approach would be my policy preference as well, but I concluded that "[t]he problem, of course, is that this is *not* the policy preference that the Legislature expressed in the clear and unambiguous words of the statute."[14]

Nippa then filed an application for leave to appeal to the Supreme Court. In lieu of granting leave to

---

[9] *Nippa I, supra* at 680.

[10] *Id.* at 686.

[11] *Id.* at 690-691.

[12] I used the term "derivative" liability as a synonym for "vicarious" liability.

[13] *Id.* at 689-690.

[14] *Id.* at 690.

appeal, the Supreme Court vacated the judgment of this Court in *Nippa I* and remanded to this Court for reconsideration in light of *Cox, supra.* The Supreme Court stated:

> A hospital may be vicariously liable for the negligence of its agents [citing *Cox, supra* at 11]. In *Cox,* the Court stated that a "hospital's vicarious liability arises because the hospital is held to have done what its agents have done." *Id.* at 15. Even when the hospital is the only named defendant, the issue remains whether the hospital's agents violated the standard of care applicable to them. *Id.* at 5, 14-15.[15]

The majority, not surprisingly, now reaches the conclusion that *Cox* supports its decision in *Nippa I.*[16] It concludes that the Supreme Court remanded this case for us to apply the logic of *Cox* to the present case[17] and states that:

> Applying the logic of *Cox* to the present case, we hold that the standard of care applicable to the hospital is the same standard of care that is applicable to the physicians named in the complaint. For all practical purposes, the hospital stands in the shoes of its agents (the doctors).
>
>       *      *      *
>
> All procedural requirements are applicable to the hospital in the same manner and form as if the doctor were a named party to the lawsuit. This is so because the law creates a practical identify between a principal and an agent, and, by a legal fiction, the hospital is held to have done what its agents have done [citing *Cox, supra* at 11]. It would be

---

[15] *Nippa v Botsford Gen Hosp,* 468 Mich 881 (2003) (vacating and remanding in lieu of granting leave to appeal).

[16] *Ante* at 389.

[17] *Ante* at 391.

absurd to have one set of legal rules for a hospital and another set of legal rules for its agents.[18]

The majority then concludes that, because Botsford's physicians involved in this matter are board-certified in general surgery and infectious diseases while Nippa's expert is not board-certified in either specialty, the trial court properly dismissed the complaint.[19]

## II. APPLYING THE LOGIC OF *COX* TO THE FACTS OF THIS CASE

I first note that *Cox* did not deal at all with an interpretation of MCL 600.2169. Rather, it dealt with the propriety of a jury instruction relating to the neonatal intensive-care unit at Hurley Medical Center. When the trial court instructed the jury, it significantly modified SJI2d 30.01. The trial court stated:

> "When I use the words professional negligence or malpractice with respect to the Defendant's conduct, I mean the failure to do something which a *hospital neonatal intensive care unit* would do or the doing of something which a *hospital neonatal intensive care unit* would not do under the same or similar circumstances you find to exist in this case.
>
> "It is for you to decide, based upon the evidence, what the *hospital neonatal intensive care unit* with the learning, judgment or skill of its people would do or would not do under the same or similar circumstances."[20]

---

[18] *Ante* at 391, 392, citing, as an example, *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 142-143, 150; 662 NW2d 758 (2003) (statutory construction should avoid an illogical or absurd result).

[19] *Ante* at 397.

[20] *Cox, supra* at 10 (emphasis supplied).

The Supreme Court held that this modified instruction was in error and that this error was not harmless.[21] It noted that the jury instruction, as modified, eliminated any reference to any particular profession, person, or specialty and substituted, instead, the phrase "neonatal intensive care unit." It also noted that the modified jury instruction also failed to differentiate between the various standards of care applicable to different professions and specialties.[22] It further noted that because no evidence of record existed that the neonatal intensive-care unit itself is capable of any independent actions, including negligence, "it follows that the unit itself could not be the basis for [the hospital's] vicarious liability."[23]

The Supreme Court discussed the concept of vicarious liability, stating that a hospital may be vicariously liable for the negligence of its agents[24] and that even when the hospital is the only named defendant, the issue remains whether the hospital's agents violated the standard of care applicable to them.[25] The Court then held that in order to find a hospital liable on a vicarious-liability theory, the jury must be instructed regarding the specific agents against whom negligence is alleged and the standard of care applicable to each agent.[26]

Applying this logic to the facts of this case would, I readily concede, be difficult, for the simple reason that this case did not go to trial and there was no jury

---

[21] *Id.* at 14 n 14.

[22] *Id.* at 10.

[23] *Id.* at 12.

[24] *Id.* at 11.

[25] *Id.* at 5, 14-15.

[26] *Id.* at 15.

instruction. Had there been such an instruction, however, it is abundantly clear from *Cox* that it would have been error to simply insert the words "Botsford Hospital" in place of the words "named profession" in SJI2d 30.01, as the trial court in *Cox* substituted the words "hospital neonatal intensive care unit" for the words "named profession" when it modified SJI2d 30.01. Rather, here, Nippa would have been required to prove the negligence of at least one agent of Botsford to give rise to vicarious liability on the part of Botsford and the trial court would have been required to instruct with respect to the negligence and the standard of care of this agent—or these agents—and not with respect to Botsford as the principal. Such an approach would be eminently sensible and would align directly with the overall concept of vicarious liability.

### III. APPLYING THE LOGIC OF *COX* TO THE LEGAL ISSUE IN THIS CASE

To belabor the point, however, these are not the facts of this case and proceeding down this road is an exercise in futility. The more productive exercise, it seems to me, is to apply the logic of *Cox* to the legal issue in this case. That legal issue, again, is whether, under MCL 600.2169, a plaintiff suing a hospital, and *only* a hospital, under a theory of vicarious liability is required to file an affidavit of merit signed by a physician who is board-certified in the specialty or specialties of the agent or agents of the hospital that the plaintiff claims engaged in medical malpractice.[27]

---

[27] In its footnote 6, the majority notes that *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 213; 642 NW2d 346 (2002), involved a medical-

The majority uses the logic of *Cox* to amend MCL 600.2169 so that the term "party" in that statute includes the term "agent."[28] This, I contend, is exactly contrary to the explicit language of *Cox*. In dealing with the issue of the applicable standard of care for nurses—an issue not present in this case—the Supreme Court was interpreting MCL 600.2912a, the statute that sets out the standard of care for general practitioners and specialists. The Supreme Court noted that the statute does not define "general practitioner" or "specialist." The Court then stated:

> When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the statutory language.

---

malpractice action with a hospital as a sole defendant. My reading of the case compels the same conclusion. However, I do note that the opinion in *Tate* did not address the issue here. Indeed, it appears that the *Tate* panel assumed, without confronting the issue at all, that when a hospital is the sole defendant MCL 600.2169 requires a plaintiff to file an affidavit of merit signed by a physician who is board-certified in the specialty or specialties of the agent or agents of the hospital that the plaintiff claims engaged in medical malpractice. Thus, much as the majority does here, the *Tate* panel appears to have conflated a defendant hospital with its physician agent when dealing with the requirements of MCL 600.2169. See, for example, the following statement from *Tate*:

> Surely the Legislature did not intend to eradicate a plaintiff's ability to bring a meritorious malpractice action *against a defendant physician* who happens to have board certifications in several different fields. [*Tate, supra* at 219 (emphasis supplied).]

Both the majority and I agree that *Tate* did not involve a defendant physician. Rather, it involved a hospital as the sole defendant. It is difficult to see, therefore, how *Tate* helps us here; rather, it appears simply to compound the confusion.

[28] The majority denies that it is amending the statute so that the term "party" includes the term "agent." *Ante* at 396 n 9. Rather, it concludes "only that the term 'party' encompasses the negligent party as set forth in the complaint filed by plaintiff." *Id.* The majority will forgive me if I fail to comprehend the difference between that which it claims not to do and that which it does.

*DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000); *Massey v Mandell*, 462 Mich 375, 379-380; 614 NW2d 70 (2000). Undefined statutory terms must be given their plain and ordinary meanings. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248-249; 596 NW2d 574 (1999). When confronted with undefined terms, it is proper to consult dictionary definitions. *Id.*[29]

In *Nippa I*, the majority straightforwardly admitted (1) that the term "party" in MCL 600.2169 was not defined in the statute, (2) that it had therefore consulted Black's Law Dictionary (6th ed), and (3) that the word "party," as defined in Black's Law Dictionary, is a "legal term of art that has acquired a particular meaning in the law."[30] One searches in vain in Black's, or other commonly used dictionaries,[31] to find a definition of the word "party" that includes the word "agent"; indeed, Black's states, as noted above, that the word "party" " 'refers to those by or against whom a legal suit is brought, whether in law or in equity, *the party plaintiff or defendant*, whether composed of one or more individuals and whether natural or legal persons; *all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties.*' " *Nippa, I, supra* at 674 (emphasis supplied). Quite clearly, then, the word "party" does not include within its meaning the word "agent."

---

[29] *Cox, supra* at 18.

[30] *Nippa I, supra* at 674.

[31] See *Random House Webster's College Dictionary* (1997): A "party" is "one of the litigants in a legal proceeding; a plaintiff or defendant . . . a signatory to a legal instrument." See also Garner, *A Dictionary of Modern Legal Usage* (New York: Oxford University Press, 2d ed, 1995) (a "party" is "a LEGALISM that is unjustified when it merely replaces *person*. If used as an elliptical form of *party to the contract* or *party to the lawsuit*, *party* is quite *acceptable* as a TERM OF ART") (emphasis in the original).

IV. CONCLUSION

Applying the logic of *Cox* to the facts of this case leads ultimately to a blind alley. *Cox* deals, with respect to the concept of vicarious liability, with an instructional error. There were no instructions in this case and therefore there can be no instructional error. Applying the logic of *Cox* to the legal issue in this case is possible only if one expands the meaning of the word "party" to include the word "agent."

With what, then, are we left? I believe we are left with a well-intentioned effort to rewrite MCL 600.2169 to make it less "illogical" and more in accordance with common sense. At the risk of repetition, I return to my conclusion in *Nippa I*:

> [S]uch an amended statute would be logical, fair, and, I would hope, workable. Perhaps the Legislature will enact such an amendment. As yet, however, it has not. There is nothing in our judicial commissions or anywhere to be found in the concept of the separation of powers that empowers us to perform this task as the Legislature's surrogate. It is not within our judicial responsibilities to undertake to do what the Legislature should have done, but did not do. The majority chooses to embark on just such an undertaking. I do not. I would, therefore, reverse.[32]

The majority again raises, in responding to this dissent, the issue of the definition of the word "party," suggesting that the dissent uses a "pigeonholed definition" and "destroys the intended purpose and meaning of the statute."[33] Again at the risk of repetition, I note that in *Nippa I*, the majority conceded that MCL

---

[32] *Nippa I, supra* at 691.
[33] *Ante* at 397.

600.2169 does not define the word "party."[34] That was certainly correct. Accordingly, the majority in *Nippa I* turned to a dictionary to ascertain the meaning of that word.[35] That was certainly appropriate.[36] The dictionary to which the majority turned was Black's. The central definition of a party in Black's is: "A party to an action is a person whose name is designated on record as plaintiff or defendant."[37] The majority now contends that the statute itself does not say "party defendant," "party of record," "party plaintiff," or agent for "party plaintiff."[38] This is certainly so. The majority then states that, "What § 2169 does say is 'party.' "[39] This is also certainly so. It is equally certain that, under any dictionary definition that I have been able to find, the term "party" does *not* include the allegedly negligent agent of a party.

The majority's statement that it has resolved the "linguistic problem" with a "straightforward, common-sense approach" is, however, certainly true.[40] The attempt is earnest and well-intentioned. It makes the statute less illogical and more sensible. But we are not modern-day alchemists with a roving commission to turn legislative lead into judicial gold. We cannot, in the name of common sense, redefine the word party to include the word agent; that is a task for the Legislature to undertake if it chooses. The response to the Supreme Court's remand should not be to

---

[34] *Id.* at 673.

[35] *Id.* at 674.

[36] See *Donajkowski, supra.*

[37] Black's, *supra,* p 1122. See also *Random House Webster's College Dictionary, supra,* and *A Dictionary of Modern Legal Usage, supra.*

[38] *Nippa 1, supra* at 395-396.

[39] *Id.* at 396.

[40] *Id.*

undertake the legislative task of amending the statute but rather to give the plain and ordinary meaning to the undefined statutory term[41] "party." If one does so, then I believe the resolution to the problem at hand is to hold that Nippa, while required to file an affidavit of merit signed by a physician, was not required, when she sued only Botsford, to file an affidavit signed by a board-certified specialist. This is not, by any stretch of the imagination, an absurd result and it applies the law as the Legislature enacted it.

---

[41] *Cox, supra* at 18.