**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5439-15T1

FRANK TETTO,

    Plaintiff-Appellant,

v.

ST. CLARE'S HOSPITAL,

    Defendant-Respondent.

_____

Submitted September 19, 2017 — Decided August 27, 2018

Before Judges Yannotti and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Morris County, Docket No.
L-2541-15.

Anthony J. Macri, attorney for appellant.

Rosenberg Jacobs Heller & Fleming, PC,
attorneys for respondent (Raymond J. Fleming,
of counsel and on the brief; Christopher
Klabonski, on the brief).

PER CURIAM

    Plaintiff Frank Tetto appeals an August 5, 2016 order

dismissing his complaint for failure to comply with the Affidavit

of Merit (AOM) statute, N.J.S.A. 2A:53A-26 to -29, and with

N.J.S.A. 2A:53-41(a) of the New Jersey Medical Care Access and Responsibility and Patients First Act, L. 2004, c. 17 (Patients First Act). We hold the AOM statute required plaintiff to provide an AOM. We also hold his AOM had to meet the requirements of N.J.S.A. 2A:53A-41(a) because he claimed defendant St. Clare's Hospital was vicariously liable for the alleged negligence of the specialist physicians who diagnosed him at the hospital. Because his AOM did not meet those requirements, we affirm.

I.

Plaintiff's complaint alleges as follows. On December 29, 2013, he went to defendant's emergency room, complaining of jaundice. He "was seen by a physician who was an employee or agent of the defendant . . . who took a history from him." He told the physician that "he occasionally had wine with dinner." Plaintiff's answers to interrogatories stated he had been drinking a glass or two of wine with dinner for the past two or three months. The hospital's records indicated he said he had been drinking one to two glasses of wine daily for three months.

Plaintiff's complaint alleged "[t]he physician negligently interpreted the history and symptoms, and negligently and improperly concluded that the plaintiff was an alcoholic and that plaintiff's jaundice was caused by an alcohol problem." The

complaint alleged "plaintiff was suffering pancreatic cancer which was the cause of the jaundice."

Plaintiff's complaint alleged that as a result of the physician's negligence, "information [was] put into his record to the effect that he was an alcoholic." In his answers to interrogatories, he specified he was referring to his "discharge papers [which] had the misdiagnosis of '3. Alcohol abuse.'"

On December 30, 2013, plaintiff requested his medical record be amended to remove that diagnosis. Defendant amended its records to remove the diagnosis. On October 26, 2015, plaintiff filed his complaint "for damages" against defendant in the Law Division.

On December 14, 2015, defendant filed its answer asserting plaintiff's claims were subject to the AOM requirement in N.J.S.A. 2A:53A-27. On January 29, 2016, the Law Division ordered that "plaintiff[] must file and serve an [AOM]" by "February 12, 2016, or with the consent of the parties by April 12, 2016." Plaintiff filed an AOM dated February 19, 2016, by Thomas Bojko, M.D., a pediatrician with experience in healthcare administration.

On April 13, 2016, defendant filed a motion to dismiss plaintiff's complaint for failing to comply with the AOM statute and N.J.S.A. 2A:53A-41(a). Defendant's certification stated the "alcohol abuse" diagnosis was made by doctors specializing in internal medicine or emergency medicine.

On August 5, 2016, after hearing argument, the trial court granted defendant's motion, and dismissed plaintiff's complaint with prejudice. Plaintiff appeals.

## II.

We must hew to our standard of review. We review the decisions to dismiss under the AOM statute "de novo." Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016). Moreover, plaintiff's appeal raises legal issues of statutory construction that we review de novo. Meehan v. Antonellis, 226 N.J. 216, 230 (2016).

"When the interpretation of a statute is at issue, '[t]he objective of that task "is to discern and effectuate the intent of the Legislature."'" Id. at 232 (citations omitted).

> We begin by giving the words of the statute "their ordinary meaning and significance." Words, phrases, and clauses cannot be viewed in isolation; all the parts of a statute must be read to give meaning to the whole of the statute. In this way, we must construe the statute sensibly and consistent with the objectives that the Legislature sought to achieve. If the statute's plain language reveals the Legislature's intent, our interpretative mission should come to an end. We resort to extrinsic evidence, such as legislative history, only "if there is ambiguity in the statutory language that leads to more than one plausible interpretation," or "if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language."

[<u>Nicholas v. Mynster</u>, 213 N.J. 463, 480 (2013) (citations omitted).]

III.

First, plaintiff claims his complaint does not fall under the AOM statute because it is not a medical malpractice action. The AOM statute provides in pertinent part:

> <u>In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall</u>, within 60 days following the date of filing of the answer to the complaint by the defendant, <u>provide each defendant with an affidavit</u> of an appropriate licensed person that there exists a reasonable probability <u>that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices</u>. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> <u>In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of</u> a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L. 2004, c. 17 (C. <u>2A:53A-41</u>).
>
> [N.J.S.A. 2A:53A-27 (emphasis added).]

Plaintiff's complaint falls within the scope of the first paragraph of N.J.S.A. 2A:53A-27, which "applies to all actions for

damages based on professional malpractice." <u>Paragon Contractors, Inc. v. Peachtree Condo. Ass'n</u>, 202 N.J. 415, 421 (2010).

> There are three elements to consider when analyzing whether the statute applies to a particular claim: (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).
>
> [<u>Couri v. Gardner</u>, 173 N.J. 328, 334 (2002) (quoting N.J.S.A. 2A:53A-27)].

First, plaintiff's complaint brought an "action for damages for personal injuries . . . or property damage." N.J.S.A. 2A:53A-27. The complaint averred that as a result of the discharge diagnosis, plaintiff incurred damages including extreme and severe mental distress, damage to his reputation as this improper medical history was given and available to subsequent healthcare professionals, and legal fees to get defendant to change this wrongful entry into his medical records.

Personal injuries include "[a]ny invasion of a personal right, including mental suffering[.]" <u>Black's Law Dictionary</u> 802 (8th ed. 2004). "The term 'property damage'" includes "damages both to real and personal property." <u>Cornblatt v. Barow</u>, 303 N.J.

Super. 81, 86 (App. Div. 1997), rev'd on other grounds, 153 N.J. 218 (1998). "Personal property embraces everything that may be tangible or intangible such as a chose in action" or a claim for money damages. Ibid. ("conclud[ing] that a claim against an attorney for alleged malpractice is a claim for property damage"); see Nuveen Mun. Tr. v. Withumsmith Brown P.C., 752 F.3d 600, 603 (3d Cir. 2014); Naqim v. N.J. Transit, 369 N.J. Super. 103, 118-19 (Law Div. 2003); cf. Couri, 173 N.J. at 334-35 (finding N.J.S.A. 2A:53A-27 inapplicable because the "plaintiff narrowed his request for damages to the $12,000 that he paid to defendant," and thus sought only reimbursement).

Second, plaintiff's complaint alleged the damages "result[ed] from an alleged act of malpractice or negligence by a licensed person in his profession or occupation." N.J.S.A. 2A:53A-27. A "licensed person" includes "a physician in the practice of medicine," as well as "a health care facility." N.J.S.A. 2A:53A-26(f), (j). The complaint includes counts alleging causes of action for negligence by the physician, negligence by the hospital, intentional or negligent infliction of emotional distress, misrepresentation, injurious falsehoods, and libel. Plaintiff's allegation that the damages occurred "[a]s a result of the aforesaid negligence of the physician" was incorporated into every count of his complaint.

Plaintiff did not use the term "malpractice," but the Court in Couri held "[i]t is not the label placed on the action that is pivotal but the nature of the legal inquiry." 173 N.J. at 340.

> Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies.
>
> [Ibid. (emphasis added).]

The Court in Couri stated that this "standard would include allegations that a psychiatrist failed to diagnose a patient properly or provide proper treatment, [but] it would exclude allegations that a psychiatrist negligently tripped a patient when the patient entered the doctor's office." Id. at 341 (emphasis added).

Although plaintiff's complaint does not use the word "diagnosis," that is exactly the process it describes: "The physician negligently interpreted the history and symptoms, and negligently and improperly concluded that the plaintiff was an alcoholic and that plaintiff's jaundice was caused by an alcohol problem." The complaint alleged the physician failed to diagnose him properly because it was really "pancreatic cancer which was

8

the cause of the jaundice." He also contended this resulted in false information that he was an alcoholic being placed in his record, namely the diagnosis of "alcohol abuse" listed as one of four "Discharge Diagnoses." Thus, plaintiff's factual evaluations required proof of a misdiagnosis, an archetypal "deviation from the professional standard of care applicable to [the medical] profession." Couri, 173 N.J. at 340.

Plaintiff argues this was an administrative failure, not a failure of diagnosis. However, plaintiff is not claiming the physician correctly diagnosed him but a different diagnosis was erroneously placed on his discharge form by administrative personnel. Rather, he is claiming the physician incorrectly diagnosed him, and the discharge form was harmful because it contained that misdiagnosis.

Finally, plaintiff's complaint claimed the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices." Ibid.; see Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 540 (App. Div. 2009) (finding an AOM is required for a counterclaim making "allegations that 'the quality of work product was not sufficient,' and that plaintiff 'failed to do a complete and competent job'").

Plaintiff cites Couri, but again Couri defeats his claim. In Couri, "the crux of plaintiff's complaint is that defendant [psychiatrist] acted improperly as an expert witness by disseminating [his] report to others without the knowledge or consent of plaintiff." 173 N.J. at 342. The Court stressed that "[p]laintiff is not claiming that defendant erred in respect of the conclusions that he drew concerning psychiatric/medical matters or that defendant acted improperly from a psychiatric/medical standpoint." Ibid. That is precisely what plaintiff alleged about the physician here.

Thus, plaintiff's complaint alleged negligent diagnosis by a physician in violation of professional standards. That fits the definition of "medical malpractice": "A doctor's failure to exercise the degree of care and skill that a physician or surgeon of the same medical specialty would use under similar circumstances." Black's Law Dictionary 978 (8th ed. 2004). Thus, this is "an action for medical malpractice" within the meaning of N.J.S.A. 2A:53A-27 and N.J.S.A. 2A:53A-41. See, e.g., Buck v. Henry, 207 N.J. 377, 384 (2011) (applying N.J.S.A. 2A:53A-41 where the plaintiff alleged the doctor "failed to properly diagnose" him).

Plaintiff argues he was not required to provide an AOM because this case falls under the common knowledge exception. An AOM "need not be provided in common knowledge cases when an expert will not be called to testify 'that the care, skill or knowledge . . . [of the defendant] fell outside acceptable professional or occupational standards or treatment practices.'" Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 390 (2001) (quoting N.J.S.A. 2A:53A-27). "The [common knowledge] doctrine applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Id. at 394. Thus, in Hubbard, the Court applied the exception where a dentist was told to pull one tooth but pulled the wrong tooth, a classic "common knowledge" case. Id. at 396.[1]

Nonetheless, the Supreme Court cautioned that "we construe that exception narrowly in order to avoid non-compliance with the [AOM] statute." Id. at 397. We have rejected application of the common knowledge exception where defendants alleged medical

---

[1] Hubbard advised that "the wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial." 168 N.J. at 397. Plaintiff asserts he followed that advice.

misjudgments. <u>Risko v. Ciocca</u>, 356 N.J. Super. 406, 409-11 (App. Div. 2003); <u>Aster ex rel. Garofalo v. Shoreline Behavioral Health</u>, 346 N.J. Super. 536, 542 n.4 (App. Div. 2002).

Plaintiff alleged that a physician "failed to diagnose [him] properly," which "require[s] proof of a deviation from [a] professional standard of care." <u>Couri</u>, 173 N.J. at 341.

> Because plaintiff's predicate for liability as asserted in the complaint is the manner in which a "licensed person" exercised [professional] responsibilities and judgment, and because the respects in which the deficiencies occurred, if indeed they did occur, is not a matter within the knowledge of the average citizen or juror, plaintiff would need an expert in order to make out a <u>prima</u> <u>facie</u> case before the jury.
>
> [<u>Aster</u>, 346 N.J. Super. at 542 n.4.]

We agree with the trial court that it was beyond the knowledge of lay persons whether plaintiff's jaundice was caused by his drinking or pancreatic cancer, or whether his acknowledged daily drinking justified the medical diagnosis of "alcohol abuse."

Plaintiff argues the common knowledge exception applies because this case is about keeping accurate hospital records. However, he did not allege that his diagnosis was incorrectly recorded. <u>Cf.</u> <u>Palanque v. Lambert-Woolley</u>, 168 N.J. 398, 400-01, 406-07 (2001) (ruling a physician's misreading specimen identification numbers as test results and falsely telling a woman

she was pregnant fell within the common knowledge exception). Rather, he is arguing the physician made an incorrect diagnosis. Accordingly, he was required to present an AOM and expert testimony to make out his claim.

V.

Plaintiff points out he "is not suing any individual doctors, only the hospital." He claims that therefore "N.J.S.A. 2A:53A-41(a)[] does not apply since the hospital is not a 'specialist or subspecialist.'" To resolve his claim, we must consider both N.J.S.A. 2A:53A-41(a) and the principles of vicarious liability.

A.

We first examine the language of N.J.S.A. 2A:53A-41(a). That section states in pertinent part:

> In an action alleging medical malpractice, a person shall not give expert testimony or execute an affidavit pursuant to the provisions of P.L. 1995, c. 139 (C. 2A:53A-26 et seq.) on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the following criteria:
>
> a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist . . . , the person providing the testimony shall have specialized . . . in the same specialty or subspecialty . . . as the party against whom or on whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified, . . . the

13

> expert witness shall be . . . (2) a specialist or subspecialist . . . who is board certified in the same specialty or subspecialty . . . [and has] devoted a majority of his professional time to either: (a) the active clinical practice of the same health care profession in which the <u>defendant</u> is licensed, and, if the <u>defendant</u> is a specialist or subspecialist . . . , the active clinical practice of that specialty or subspecialty . . . [or] (b) the instruction of students . . . in the same health care profession in which the <u>defendant</u> is licensed, and, if <u>that party</u> is a specialist or subspecialist . . . in the same specialty or subspecialty[.]
>
> [N.J.S.A. 2A:53A-41(a), (a)(2) (emphasis added).][2]

Thus, our Legislature referred to the specialist physician as "the party against whom or on whose behalf the testimony is offered," "the person against whom or on whose behalf the testimony is being offered," "the defendant," and "that party." <u>Ibid.</u> All of those phrases on their face refer to the specialist physician as a named party in the medical malpractice litigation. "[T]he defendant" clearly refers to a named defendant, and "that party" refers to "the defendant" a few words earlier. <u>Ibid.</u> "[T]he party against whom or on whose behalf the testimony is offered"

---

[2] N.J.S.A. 2A:53A-41(b) similarly provides that "[i]f <u>the party against whom or on whose behalf the testimony is offered</u> is a general practitioner, the expert witness" shall either be practicing as a general practitioner or teaching "in the same health care profession in which <u>the party against whom or on whose behalf the testimony</u> [is offered] is licensed."

also clearly refers to a party to the litigation. "[T]he person against whom or on whose behalf the testimony is offered" likewise appears to refer to a party, and the Legislature treated both phrases as synonymous.

If a plaintiff sues only a health care facility and not the specialist physician, the "defendant" is the health care facility, not a specialist physician. Ibid. Similarly, it is the health care facility "against whom or on whose behalf the testimony is offered." Ibid. The health care facility is not "a specialist or subspecialist," "board certified," or "licensed" in a health care profession. Ibid. Thus, under the plain language of N.J.S.A. 2A:53A-41(a), suing only a health care facility does not trigger the requirement of an AOM from a person with the "same" specialty or subspecialty, board certification, or license. Ibid.

That conclusion is corroborated by considering the entire Patients First Act of which N.J.S.A. 2A:53A-41(a) is a part. Elsewhere in the Patients First Act, the Legislature used "defendant" and "party" to refer to a party in the medical malpractice litigation.[3] The Legislature used "third party" to

---

[3] N.J.S.A. 2A:53A-40(a) (referring to "a health care provider named as a defendant in the medical malpractice action"); N.J.S.A. 2A:53A-40(c) (addressing "a health care provider named as a defendant" and reinstatement of a dismissed "party" and sanctions paid to a "party"); N.J.S.A. 2A:53A-40(d) (discussing sanctions

refer to other persons.[4] The Legislature used "health care facility" elsewhere, but not in N.J.S.A. 2A:53A-41(a).[5]

Even if N.J.S.A. 2A:53A-41's language was ambiguous, its legislative history indicates "the party" and "the defendant" are synonymous. The language including the phrases "the party against whom or on whose behalf the testimony is offered," "the person against whom or on whose behalf the testimony is being offered," "the defendant," and "that party" in N.J.S.A. 2A:53A-41(a) was in a section of the original bill, and remained unchanged through enactment. A. 50, 4-5 (Mar. 4, 2004).[6] The bill's sponsor

---

paid to a "party") N.J.S.A. 2A:53A-41(c) (considering a "motion by the party"); N.J.S.A. 2A:53-41(f) (authorizing damages for "the party for whom the person was testifying as an expert"); N.J.S.A. 2A:53A-42 (discussing additur and remittitur "motions by any party" after "a verdict in favor of the complaining party"); N.J.S.A. 17:30D-7(a) (requiring notice of "any medical malpractice claim settlement, judgment or arbitration award to which the practitioner is a party"); N.J.S.A. 17:30D-27(a) (discussing "a defendant in an action brought for medical malpractice"); N.J.S.A. 17:30D-27(b) (discussing the form of judgment "[u]nless otherwise agreed to by the parties").

[4] N.J.S.A. 17:30D-19(d)(4) (a purchasing alliance may "contract with third parties"); L. 2004, c. 17, § 31(d)(2) (creating a task force to study "the impact of third party reimbursement policies by insurers and health maintenance organizations").

[5] See, e.g., N.J.S.A. 2A:62-1.3; N.J.S.A. 45:9-19.13(b); N.J.S.A. 17:30D-7(a).

[6] The same language was in one Senate bill, S. 50, 5 (Mar. 22, 2004), and similar language using "party" and "defendant" was in another Senate bill, S. 551, 7 (pre-filed for 2004).

explained that section "establishes qualifications for expert witnesses in medical malpractice actions and for the purpose of executing an affidavit of merit, and provides that an expert must have the same type of practice and possess the same credentials, as applicable, as <u>the defendant health care provider</u>, unless waived by the court." <u>Sponsors' Statement appended to A. 50</u> 20 (Mar. 4, 2004) (emphasis added). This explanation of the section was repeated unchanged throughout the legislative process.[7] The legislators' consistent description of the specialist physician as "the defendant health care provider" corroborates that when the Legislature used the "defendant" and "party" language in N.J.S.A. 2A:53A-41(a), it was referring to a specialist physician who was a defendant in the medical malpractice action.

The legislative findings in the Patients First Act show that the Legislature's focus was on individual specialist physicians. The Legislature found and declared:

> a. One of the most vital interests of the State is to ensure that high-quality health care

---

[7] <u>Assemb. Appropriations Comm. Statement To Assemb. Comm. Substitute For A. 50</u> 1-2 (Mar. 4, 2004); <u>Assemb. Health & Human Services Comm. Statement To Assemb. Comm. Substitute For A. 50</u> 1-2 (Mar. 4, 2004); <u>Assemb. Financial Institutions & Ins. Comm. Statement To Assemb. Comm. Substitute For A. 50</u> 2 (Mar. 4, 2004); <u>Sen. Health, Human Services And Senior Citizens Comm. Statement To Assemb. Comm. Substitute For A. 50</u> 2 (Mar. 22, 2004); <u>accord Sponsors' Statement appended to S. 50</u> 20 (Mar. 22, 2004); <u>Sen. Health, Human Services And Senior Citizens Comm. Statement To Sen. Comm. Substitute For S. 50 & S. 551</u> 2 (Mar. 22, 2004).

continues to be available in this State and that the residents of this State continue to have <u>access to a full spectrum of health care providers, including highly trained physicians in all specialties</u>;

b. The State's health care system and its residents' access to health care providers are threatened by a <u>dramatic escalation in medical malpractice liability insurance premiums</u>, which is creating a crisis of affordability in the purchase of necessary liability coverage for our health care providers;

c. One particularly alarming result of rising premiums is that there are <u>increasing reports of doctors retiring or moving to other states where insurance premiums are lower, dropping high-risk patients and procedures, and practicing defensive medicine</u>;

d. <u>The reasons for the steep increases in the cost of medical malpractice liability insurance</u> are complex and <u>involve issues related to: the State's tort liability system</u>; the State's health care system, which includes issues related to patient safety and medical error reporting; and the State's regulation and requirements concerning medical malpractice liability insurers; and

e. It is necessary and appropriate for the State to take meaningful and prompt action to address the various interrelated aspects of these issues that are impacted by, or impact on, the State's health care system; and

f. To that end, this act provides for a comprehensive set of <u>reforms affecting the State's tort liability system</u>, health care system and medical malpractice liability insurance carriers to ensure that health care services continue to be available and accessible to residents of the State and to

> enhance patient safety at healthcare facilities.
>
> [N.J.S.A. 2A:53A-38 (emphasis added).]

"One of those reforms is embodied in the enhanced standards contained in Section 41 [N.J.S.A. 2A:53A-41]." Meehan, 226 N.J. at 234. By requiring that an AOM or expert testimony in a medical malpractice action against a specialist physician generally must be provided by a person in the same specialty, the Legislature sought to weed out meritless lawsuits against specialist physicians, and thus reduce their medical malpractice insurance premiums. That serves the Legislature's goals of keeping specialist "doctors" from leaving the State, or dropping high-risk practices and procedures, and thus ensuring access to specialist "physicians." N.J.S.A. 2A:53A-38. Thus, the Legislature's focus was on suits against individual physician specialists. See Lomando v. United States, 667 F.3d 363, 387 (3d Cir. 2011); N.J. State Bar Ass'n v. State, 382 N.J. Super. 284, 298-303 (2005), aff'd, 387 N.J. Super. 24 (App. Div. 2006).

All of our Supreme Court's cases involving the statute have thus far involved suits against individual specialist physicians. Nicholas, 213 N.J. at 470 & n.5; Buck, 207 N.J. at 383; Ryan v. Renny, 203 N.J. 37, 43 (2010). The Court has referred to the statute as "applying only to physicians who are defendants in

medical malpractice actions" rather than dentists in dental malpractice actions.  Meehan, 226 N.J. at 234.  The Court has also referred to the statute as applying: to a "physician party" and "parties to a medical malpractice action," id. at 233; to a "defendant physicians," Nicholas, 213 N.J. at 467-468, 481-82, 485-86; Ryan, 203 N.J. at 52; where "the defendant is a specialist, board-certified, or a general practitioner," Ryan, 203 N.J. at 57-58; see id. at 52-54; and to "a physician defending against a malpractice claim," Buck, 207 N.J. at 396; see R. 4:5-3.  Our cases have used similar terms.  E.g., Castello, 446 N.J. Super. at 15-18; Medina v. Pitta, 442 N.J. Super. 1, 18-30 (App. Div. 2015); Mazur v. Crane's Mill Nursing Home, 441 N.J. Super. 168, 178, 181 (App. Div. 2015).  Thus, courts have read N.J.S.A. 2A:53A-41 in accordance with its plain language.

Accordingly, we decline to find that the Legislature decided whether the AOM requirements of N.J.S.A. 2A:53A-41 should apply if the only defendant was a health care facility.  The statutory language and legislative history indicate the Legislature was focused on suits against individual specialist physicians.  The Legislature was silent as to health care facilities.  N.J.S.A. 2A:53A-41(a) solely addresses the requirements for an AOM and for expert testimony in situations where the specialist physician is a party.

In <u>Hubbard</u>, our Supreme Court created an exemption from the AOM requirement for common knowledge cases, reasoning: "We do not know whether the drafters of this legislation even contemplated a common knowledge exemption, but believe such an exemption to comport with their likely intent, and with a practical common sense interpretation of the statute." 168 N.J. at 395-96. Similarly, it does not appear that the Legislature considered whether a defendant who invoked the judicially-crafted principles of vicarious liability to sue a health care facility based on the alleged negligence of a specialist physician should be required to meet the AOM requirements. We believe that such a requirement comports with their likely intent if they had considered that issue, and with a practical, common-sense implementation of the statutory scheme. In any event, we believe it is called for by an even-handed application of the principles of vicarious liability.

Plaintiff's complaint invokes the judicially-crafted principles of vicarious liability for agency and respondeat superior. After describing "the negligence of the physician," his complaint repeatedly claimed defendant was "liable for the referenced negligent acts of" its "employees, agents, or servants." Where a plaintiff invokes the principles of vicarious

liability in an effort to hold a health care facility liable as a principal or employer for the negligence or malpractice of a specialist physician agent or employee, then under those principles the liability of the principal or employer must be judged on the same basis as the liability of the agent or employee.

The courts of New Jersey apply "a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees." Carter v. Reynolds, 175 N.J. 402, 408 (2003). The New Jersey courts also apply the companion "principle that 'a verdict which exonerates the employee from liability requires also the exoneration of the employer.'" Walker v. Choudhary, 425 N.J. Super. 135, 152 (App. Div. 2012) (quoting Kelley v. Curtiss, 16 N.J. 265, 270 (1954)). "This conclusion is rooted in 'considerations of fundamental fairness that, if the employee is not to be held responsible for his wrongdoing, the employer whose liability is asserted solely upon the basis of imputed responsibility for his employee's wrong cannot in fairness and justice be required to respond in damages for it.'" Ibid. (quoting Kelley, 16 N.J. at 271).

We believe the same principles of fundamental fairness apply here. N.J.S.A. 2A:53A-41(a) requires that a specialist physician may not be sued or held liable for alleged negligence within that specialty unless an AOM is provided, and expert testimony

presented, by an expert with the same specialty. Here, plaintiff sought to hold a health care facility vicariously liable for the alleged malpractice or negligence of a specialist physician. If the specialist physician cannot be held liable under N.J.S.A. 2A:53A-41(a) because no expert with that specialty will provide an AOM or testify that any negligence occurred, the health care facility cannot in fairness and justice be held vicariously liable. Thus, considerations of fundamental fairness require the same AOM and expert testimony requirements apply before a health care facility can be found liable for the specialist physician's alleged negligence under principles of vicarious liability.

We have repeatedly utilized the principles governing vicarious liability to govern the application of the AOM statute. In Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590 (App. Div. 2001), the plaintiff sued an engineering firm, alleging it "was responsible, under respondeat superior, for its hydrogeologist's negligent siting of [a] well." Id. at 597 (also noting "[t]he firm may also be responsible for the hydrogeologist's work on an agency theory"). We held the plaintiff properly supplied the firm with an AOM from a geologist, "despite the fact that only the engineering firm was sued," because "[t]he liability pressed against the engineering firm is solely vicarious." Id. at 598.

23

In Shamrock Lacrosse, Inc. v. Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, 416 N.J. Super. 1 (App. Div. 2010), the plaintiff sued only law firms, based on the "allegedly negligent omissions by a [deceased] patent attorney who had worked, in succession, at the two law firms." Id. at 4-5, 9. The plaintiff argued it was not required to serve an AOM on the firms because N.J.S.A. 2A:53A-26(c) listed only "an attorney" and not a law firm as a "licensed person" entitled to an AOM. Id. at 16. We rejected that claim, emphasizing: "if plaintiff's reading of the statute were accepted, that individualized protection would provide no solace to a law firm that could have vicarious liability for the actions or inactions of the licensed attorneys employed by, or affiliated with, that firm." Id. at 22. We rejected that result because the plaintiff sought "to invoke principles of vicarious liability . . . to make those law firms financially accountable for the harm that" their employees caused. Id. at 23; see id. at 18, 23 (citing with approval Martin v. Perinni Corp., 37 F. Supp. 2d 362, 365-66 (D.N.J. 1999), which applied principles of vicarious liability to require an AOM against an architectural firm run by a licensed architect).

In Shamrock, we agreed "it would be 'entirely anomalous' to allow a plaintiff to circumvent the affidavit requirement by naming only law firms as defendants in a legal malpractice complaint and

not the individual attorneys who performed the services." Id. at 26. "The 'salutary benefit' of the affidavit of merit - in winnowing out unfounded malpractice claims, and in reducing burdens on parties, counsel, witnesses, jurors, and our publicly-funded state court system - logically should apply to this case." Ibid.[8]

In Albrecht v. Corr. Med. Servs., 422 N.J. Super. 265 (App. Div. 2011), we cited with approval the opinion in Naqim requiring a plaintiff to provide an AOM to "a firm comprised of licensed persons even though it did not qualify as a licensed person itself." Id. at 272 (alterations in original) (citing Naqim, 369 N.J. Super. at 109). We noted Naqim's ruling that "the purpose of the [AOM Statute] would be significantly thwarted if [the] plaintiffs could avoid [its] requirements . . . by simply alleging professional negligence on the part of a firm of licensed professionals, without naming any such individual professional specifically" because the firm's liability "is dependent upon the acts or omissions of its individual employees." Id. at 272 (alterations in original) (quoting Naqim, 369 N.J. Super. at 109).

---

[8] Shamrock also found that "the wording of the affidavit of merit statute contemplates such potential vicarious liability," and that "[t]he provision's focus is on the resulting harm, not on the business forms of the named defendants." Id. at 23. We refused to "read [it] in a crabbed fashion that leads to anomalous results." Id. at 26.

We ruled: "Read together, [Nagim and Shamrock] hold that when a firm's shareholders are licensed persons under the statute, a plaintiff is required to provide an AOM in order to pursue litigation against the firm alone under respondeat-superior principles." Id. at 273.[9]

We later ruled "[t]he requirement to serve an AOM also applies . . . where a plaintiff 'wishes to invoke principles of vicarious liability' against partners of a law firm for a fellow partner's malpractice or negligence." Mortg. Grader, Inc. v. Ward & Olivo, LLP, 438 N.J. Super. 202, 214 (App. Div. 2014) (quoting Shamrock, 416 N.J. Super. at 23). In affirming on other grounds, the Supreme Court stated it was sufficient that the plaintiff served an AOM on the law firm and the allegedly negligent partner. Mortg. Grader, Inc. v. Ward & Olivo, LLP, 225 N.J. 423, 443 (2016).

Finally, in McCormick v. State, 446 N.J. Super. 603 (App. Div. 2016), a prisoner sued the State alleging negligent treatment by the prison's contract medical staff. Id. at 607-08. Faced with the issue "whether the plaintiff can avoid the need to obtain

---

[9] Subsequently, we have reiterated that Shamrock requires plaintiffs to provide AOMs to entities "if the claim were solely based upon a theory of vicarious liability or agency" for an employee or agent who was a licensed person who allegedly acted negligently. Hill Intern. v. Atl. City Bd. of Educ., 438 N.J. Super. 562, 591-93 (App. Div. 2014), appeal dismissed, 224 N.J. 523 (2016); Mazur, 441 N.J. Super. at 183.

an AOM by suing only the public entity and not the professionals," "we conclude[d] that such circumvention of the statute is impermissible and affirm[ed] the trial court's determination that an AOM was required." Id. at 607. We ruled:

> If such professionals while serving the State, or for that matter any other public entity, engage in harmful conduct that deviates from the standards of care of their respective fields of licensure, and a plaintiff claims that the defendant public entity is liable for that harm under agency principles, then an AOM from an appropriate qualified person is necessary to support the lawsuit.
>
> [Id. at 613 (emphasis added).]

McCormick reiterated that "an AOM is still required when the plaintiff's claim of vicarious liability hinges upon allegations of deviation from professional standards of care by licensed individuals who worked for the named defendant." Id. at 613-16. Thus, we held that "an AOM [is] required when a tort plaintiff sues a public entity for vicarious liability based on the professional negligence of its staff" in their capacity as licensed persons. Id. at 617-18. "If an AOM is called for, a plaintiff may not evade the requirement by suing only a public entity and arguing that the entity is not a licensee listed under [N.J.S.A. 2A:53A-26]." Id. at 614.

In McCormick, we also suggested that, "if the professional who caused the harm is a physician, the more stringent

27                                                        A-5439-15T1

specialization and sub-specialization requirements of the Patients First Act, as set forth in Section 41, may constrict the range of appropriate affiants." Id. at 613 n.3. In remanding, we instructed that "where a plaintiff chooses to sue a public entity for medical malpractice on a theory of vicarious liability," the defendant should indicate the "specialties of the physicians, if any, involved in the defendant's care, along with whether the treatment the defendant received involved those specialties," and that the plaintiff must provide the AOMs "required under Sections 27 and 41 of the AOM statute [] that correspond to the qualifications of the individual professionals disclosed by the defendant." Id. at 619.

We now hold what we suggested in McCormick: N.J.S.A. 2A:53A-41(a)'s requirements for an AOM from a person with the same specialty as the allegedly negligent specialist physician apply when the plaintiff sues only an entity and claims it is vicariously liable for the specialist physician's negligence. As a matter of "fundamental fairness," if a plaintiff invokes the principles of vicarious liability to hold an entity liable for a specialist physician's negligence, then the plaintiff under those principles should have to provide the same AOM and expert testimony as required to find liability against the specialist physician. Walker, 425 N.J. Super. at 152. Again, "if the employee is not

28

to be held responsible for his wrongdoing, the employer whose liability is asserted solely upon the basis of imputed responsibility for his employee's wrong cannot in fairness and justice be required to respond in damages for it.'" Ibid. (quoting Kelley, 16 N.J. at 271).

We find further support in a similar case applying a specialist physician statute similar to N.J.S.A. 2A:53A-41.[10]  A

_____

[10] That Michigan statute provides:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.
>
> (b) . . . [The expert must have] devoted a majority of his or her professional time to either or both of the following:
>
> (i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a

plaintiff sued only the hospital, and claimed she therefore did not have to file an AOM from an expert in the same specialty as the allegedly negligent specialist physician. <u>Nippa v. Botsford Gen. Hosp.</u>, 668 N.W.2d 628, 630 (Mich. Ct. App. 2003).

The Court of Appeals of Michigan rejected that claim based on principles of vicarious liability. <u>Id.</u> at 630-32. "[U]nder a vicarious-liability theory, a principal '"is only liable because the law creates a practical identity"' between the principal and its agents. The principal is held to have done what the agent has done." <u>Id.</u> at 631 (citation omitted). "Applying th[at] logic," the court ruled "that the standard of care applicable to the hospital is the same standard of care that is applicable to the physicians named in the complaint. For all practical purposes the hospital stands in the shoes of its agents (the doctors)." <u>Ibid.</u>

Based on those principles of vicarious liability, the Michigan Court of Appeals ruled "that with regard to vicarious

---

specialist, the active clinical practice of that specialty.

(ii) The instruction of students . . . in the same health profession in which <u>the party against whom or on whose behalf the testimony is offered</u> is licensed and, if <u>that party</u> is a specialist, an accredited . . . program in the same specialty.

[MCLS § 600.2169(1) (emphasis added).]

A-5439-15T1

liability, [the] medical-malpractice law applicable to a physician is also applicable to the physician's hospital. . . . All [its] procedural requirements are applicable to the hospital in the same manner and form as if the doctor were a named party to the lawsuit." Ibid. Thus, the court held "[a] plaintiff must submit with a medical-malpractice complaint against an institutional defendant an affidavit of merit from a physician who specializes or is board-certified in the same specialty as that of the institutional defendant's agents involved in the alleged negligent conduct." Id. at 632. Echoing our case law, the court ruled that a "[p]laintiff cannot avoid the procedural requirements of the law by naming only the principal as a defendant in a medical-malpractice lawsuit. . . . It would be absurd to have one set of legal rules for a hospital and another set of legal rules for its agents." Id. at 631.[11]

Our similar ruling based on the principles of vicarious liability likewise prevents plaintiffs from evading the

---

[11] The court of appeals also held that "the term 'party' under MCL 600.2169(1)(a) encompasses the agents for whose alleged negligent acts the hospital may still be liable." 668 N.W.2d at 632. The dissenting opinion accused the majority of "rewriting MCL 600.2169 to make it less 'illogical[.]'" Id. at 632 (quoting id. at 634 (Whitbeck, C.J., dissenting)). Such a criticism does not apply here, as we base our ruling not on statutory construction of N.J.S.A. 2A:53A-41(a) but on the judicially-crafted principles of vicarious liability.

A-5439-15T1

requirements of N.J.S.A. 2A:53A-41(a) by suing only the health care facility and not the specialist physician even while claiming that the facility is liable based on the specialist physician's negligence. Our ruling also avoids having one set of legal rules for suits against specialist physicians and a different set for the health care facilities alleged to be vicariously liable, which would create uncertainty and complexity. Finally, our ruling also serves N.J.S.A. 2A:53A-41's goals of weeding out frivolous malpractice actions alleging negligence by specialist physicians, avoiding increases in their medical malpractice insurance rates, reducing their incentives to stop practicing or leave New Jersey, and thus ensure that New Jersey citizens have access to medical care by specialist physicians.

## VI.

Finally, plaintiff contends that Dr. Bojko's AOM satisfies the requirements in N.J.S.A. 2A:53A-41(a). However, that "requires that plaintiff['s] medical expert must 'have specialized at the time of the occurrence that is the basis for the [malpractice] action in the same specialty or subspecialty' as defendant['s] physicians." Nicholas, 213 N.J. at 468.

Dr. Bojko was a pediatrician, and was board-certified in pediatrics and pediatric critical care medicine. It is undisputed

that plaintiff, who was sixty-five-years old, was not treated by a pediatrician when he went to defendant's emergency room (ER).

The diagnosis of alcohol abuse appeared on forms listing Dr. Marcarious Mariyampillai as the attending and admitting physician, and on a form electronically signed by Dr. Vincent Retirado. Defendant's certification supporting its motion to dismiss asserted that "[a] review of the ER chart for Mr. Tetto indicates that the diagnosis in question was most likely made by the ER doctor, Dr. Retirado, who is an Emergency Medicine specialist, and/or the internist, Dr. Mariyampil[l]ai, who is an Internal Medicine specialist," and that each was board-certified in their specialty. Plaintiff does not contest defendant's certification.

Plaintiff does not dispute that "[e]mergency medicine . . . [and] internal medicine . . . are all distinct specialty areas recognized by the American Board of Medical Specialties." Id. at 484. Nor does he dispute that his care and treatment in the ER for jaundice involved those specialties. See N.J.S.A. 2A:53A-41(a). Thus, an expert providing the AOM must "have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty[.]" Ibid.

Moreover, as Dr. Mariyampillai and Dr. Retirado were board-certified in internal medicine and emergency medicine respectively, the expert providing the AOM must be "a physician

33                                                          A-5439-15T1

credentialed by a hospital to treat patients for the medical condition . . . that is the basis for the claim or action," or "board certified in the same specialty" and "have devoted the majority of his professional time to . . . the active clinical practice of that specialty" or "the instruction of students . . . in the same specialty." See N.J.S.A. 2A:53A-41(a)(1), (2).

Plaintiff does not claim Dr. Bojko met any of those requirements. Instead, plaintiff argues that Dr. Bojko has extensive experience as a healthcare administrator which would allow him to opine that defendant was negligent in allowing the inclusion and maintain in the hospital records of "this false information." However, plaintiff cannot show that the diagnosis was false without an AOM and expert testimony from an expert with the same specialty as the specialist physician(s) who made that diagnosis and put that diagnosis in the hospital records.

Because plaintiff failed to provide such an AOM, he could not show those specialist physicians were negligent. For the same reason, he cannot show the health care facility where they worked was vicariously liable for those specialist physicians' "negligence." Under the principles of vicarious liability, it would be fundamentally unfair to allow him to bring a frivolous medical malpractice action against defendant, who cannot in fairness and justice be required to respond in damages for it.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION